64 Cal.App.4th 1506 (1998)
KATHY V. JOVINE, Plaintiff and Appellant,
v.
FHP, INC., et al., Defendants and Respondents.
Docket No. B105314.
Court of Appeals of California, Second District, Division Three.
June 24, 1998.
*1508 COUNSEL
Daniel Romano and Kenneth H. Moss for Plaintiff and Appellant.
Heller, Ehrman, White & McAuliffe, Deborah C. Saxe and John P. LeCrone for Defendants and Respondents.
OPINION
CROSKEY, J.
This is a case about due process of law. Plaintiff Leo Baumohl[1] appeals from a summary judgment entered in favor of his employer, FHP, Inc. (FHP), and his supervisor, Charles Kiskaden (Kiskaden; collectively, defendants) after the trial court confirmed and adopted the decisions of a court-appointed referee on three motions for summary adjudication filed by the defendants.
*1509 Our review of the appellate record demonstrates that the trial court's reference of such law and motion matters was not authorized by either statute or the consent of the parties and amounted to an improper delegation of judicial power. We therefore shall reverse the judgment without reaching or discussing the merits of defendants' summary adjudication motions. Whether right or wrong, the parties on each side of a dispositive motion are entitled to have the issues fully considered and resolved by the trial court and, in the absence of a proper stipulation, the responsibility to decide cannot be delegated irrespective of the burdens imposed by the court's pending caseload.

FACTUAL AND PROCEDURAL BACKGROUND[2]
This case arises out of the termination of plaintiff's employment by FHP in September 1993. On February 6, 1995, plaintiff filed his second amended complaint which is the operative pleading before us. It has eight causes of action: (1) breach of implied contract, (2) breach of the covenant of good faith and fair dealing, (3) violation of Labor Code section 1050,[3] (4) defamation, (5) wrongful termination in violation of public policy, (6) intentional infliction of emotional distress, (7) negligent infliction of emotional distress, and (8) interference with contractual relations.
FHP is a health care provider and plaintiff, who was hired in August of 1989, worked in the corporate marketing department. Plaintiff alleges that in the course of his employment, he became aware of certain "illegal" advertising practices by an advertising agency used by FHP. One of the employees of that agency was the husband of one of FHP's high level executives. Plaintiff claims that this conflict of interest created a hostile work environment whereby FHP employees, including plaintiff, were coerced to use that particular agency or risk losing their jobs and were abused by the personnel of that agency. In addition, FHP paid exorbitant invoices submitted by the agency over the objection of FHP employees, including plaintiff. Top executives of the advertising agency were allowed to participate in confidential meetings of FHP's executive committee and received access to inside information which, plaintiff claims, allowed them to illegally make profits on stock trades in violation of federal insider trading laws.
*1510 Plaintiff alleges that when he reported such activities to his superiors they took no action.[4] Instead, plaintiff himself was wrongfully accused of participating in illegal activities, misusing company funds, creating fictitious invoices and engaging in acts of sexual harassment. He claims he was made the target of a campaign designed to force him to resign, all despite exemplary performance reviews. When he refused to give up his job, plaintiff was fired and, he alleges, false records were generated, designed to demonstrate that his termination was for cause. Many of the false charges set out in those records were published and repeated by FHP officials both internally and to third parties outside of FHP.
In response to these allegations, the defendants filed a demurrer to the sixth and seventh causes of action for emotional distress. This demurrer was sustained without leave to amend.[5] Defendants answered the balance of the causes of action in plaintiff's complaint with a general denial and the assertion of a number of affirmative defenses. In essence, it was and is the position of the defendants that plaintiff is nothing more than a disgruntled former employee who has no legal or factual basis for his claim for wrongful discharge and related causes of action. For example, defendants allege that plaintiff's employment was at will and every employment application, employee manual and relevant correspondence received, signed or approved by plaintiff all expressly confirm and acknowledge such fact. In addition, defendants assert that there can be no wrongful discharge claim as plaintiff was not fired in violation of any fundamental public policy. Defendants similarly dismiss the balance of plaintiff's causes of action as unsupported by the evidence and/or the applicable law.
Prior to the making of the court orders which are central to this appeal, plaintiff and the defendants engaged in extensive discovery proceedings. Apparently, acrimony developed not only between the parties, but also between counsel. This circumstance contributed to repeated discovery disputes which were presented to the trial court. On June 7, 1995, the court had before it the motion of the defendants for a protective order and for imposition of sanctions against both plaintiff and his counsel. At the same time, the court had on calendar the motion of plaintiff to compel attendance at a deposition of defendants' custodian of records together with the production of certain records. What happened at that hearing is central to our resolution of this appeal.
After listening to the arguments of counsel on the relative merits of plaintiff's motion to compel attendance of defendants' custodian of records, the court expressed understandable frustration:
*1511 "The Court: You lawyers really think we haven't got anything to do but resolve nonsense like this. Get together, meet and confer, set a date, set the deposition and produce the custodian.
"[Defendants' Counsel]: I am willing to produce the custodian.
"The Court: Don't try this kind of stuff in here. Call each other up on the phone and resolve it.
"[Plaintiff's Counsel]: We called each other numerous times. There is [sic] numerous letters.
"The Court: Well, set the deposition for another date. You knew she was in trial and couldn't appear.
"[Plaintiff's Counsel]: This is a dispute over what happened after she came back from trial.
"The Court: Look, get together, meet and confer, and resolve this because the next time you come in here on this issue of something [sic] not being available, not appearing at deposition, somebody is going to pay for it."
The court then turned its attention to the defendants' motion for a protective order. Defendants were seeking to limit the number of plaintiff's requests for admissions. Plaintiff had propounded 212 requests and defendants wanted a limit of 35. The court listened to counsel's argument and then reminded plaintiff that the court had previously "suggested" that plaintiff voluntarily limit the number of his requests. The following then transpired:
"The Court: And the force behind that suggestion was if I couldn't get you to agree I was going to send the whole thing to a referee.
"[Defendants' Counsel]: Yes.
"The Court: I didn't order him to limit anything because I can't do that. I don't know that much about the case. I did not know then and I don't know now whether he needs to have every one of those things answered, and I didn't want to have to go through and pick over all of the requests. And I was suggesting that perhaps you get together and work it out. It seems to me that you could have at least answered some of them."
The court then indicated that it was willing to assume that plaintiff had a good faith basis for making his discovery request until the contrary was demonstrated. The following exchange then took place:
*1512 "The Court: I am going to make that assumption. [¶] The initial request for a protective order is denied, and what I am going to do, I think I am going to send this to a referee because  unless I can get some indication from counsel that you are going to take off the gloves and pick up the phone and just talk to each other.
"[Defendants' Counsel]: We have tried that, Your Honor.
"The Court: Well, doesn't seem to be working.
"[Defendants' Counsel]: Mr. Romano refuses to deal with me. He 
"The Court: I know. I know. I know.
"[Defendants' Counsel]: There aren't a lot of options.
"The Court: You don't want to deal with her? You don't like her?
"[Plaintiffs' Counsel]: Your Honor, they're misrepresenting to the court time and time again. I signed a statement  I submitted to you a declaration, a letter  ... [¶]....
"The Court: Hold it. Hold it. Hold it. [¶] I don't want to get into this back and forth. I'm going to send this to a referee and the referee will work it out. That way I can spend my time on other things. [¶] Let's send this to Judge Nelson. Do you have any suggestions who you wish to go to?
"[Plaintiff's Counsel]: No, Your Honor.
"The Court: All right, good. Send it to Judge Nelson.[[6]]
"[Defendants' Counsel]: Are the fees split between the parties, Your Honor?
"The Court: Yes.
"[Plaintiff's Counsel]: Your Honor, may I ask the court give discretion to Judge Nelson to award fees in accordance 
*1513 "The Court: Yes. I will do that. Let's give discretion to the referee, let him make the judgment.
"[Plaintiff's Counsel]: Thank you, Your Honor.
"The Court: All right. So, the motion for protective order is denied and this matter is  it appears to me that the interest of the efficiency of justice will be best served by appointing a special referee to handle this pursuant to section 639e of CCP. It's ordered that Judge Nelson, who is a retired judge  what is the phone number?
"The Clerk: I'll have to look it up, Judge.
"The Court: All right. Well, give one of them a copy, give it to me and I'll sign it. [¶] Anyway, the special referee shall have the power to set the date, time and place of all hearings necessary as agreed upon by the parties, or in the event no agreement can be reached the special referee shall fix the date, time and place of such hearings. He also has the power to direct issuance of subpoenas, preside over hearings, take evidence, rule on objections, motions, and other requests made before, during and after hearing with the same powers if the court were to preside, except any power of contempt, which is exclusively reserved to this court. [¶] And there are other orders that are in this document, and you will be  fill one out and give one to each counsel. And this matter then be handled by Judge Nelson. [¶] All right. Thank you very much."
It appears from this discussion that the court may have had a form order already prepared which, when the names of the referee and counsel were known, was simply completed and handed to counsel. Although this is not entirely clear, it appears reasonable to conclude that the trial court made such references on a routine basis. Whatever the efficacy of that conclusion, however, two points are made very clear by the actual written order signed by the court on the same day, June 7, 1995. First, the appointment of a referee was purportedly made pursuant to Code of Civil Procedure, section 639, subdivision (e),[7] and second, the written appointment order went well beyond the scope of that statutory authority. The order, which was entitled, "Order Appointing Special Referee to Supervise, Hear and Determine Discovery Matters [639(e) C.C.P.]," provided in part:
*1514 "It appears that the interests of justice and efficiency will be best served in this matter by appointment of a Special Referee pursuant to Section 639(e) of the Code of Civil Procedure.
"It is therefore ordered that Henry P. Nelson, Retired Judge of the Los Angeles Superior Court, ... is hereby appointed Special Referee in this action for the purpose of supervising, hearing, and determining any and all motions and disputes relating to discovery/law and motion, including Motion(s) for Summary Judgment."[8] (Italics added.)
Shortly after the appointment of the referee, the defendants proceeded to bring three successive motions for summary adjudication.[9] The first was heard by the referee on November 9, 1995 and related solely to the first and second causes of action in plaintiff's complaint relating to his contract claims. In essence, defendants asserted that the undisputed evidence demonstrated that plaintiff was an "at-will" employee and thus, as a matter of law, could not recover for either breach of contract or breach of the implied covenant. The evidence supporting this contention consisted of correspondence between plaintiff and FHP, in which it was recited that plaintiff "understood" that his employment would be "at-will," and the provisions of the Employee Policies and Procedures Manual, which recites that the employment of all employees was at will. Plaintiff did not dispute the correspondence nor his awareness of the provisions of the manual, but countered that such evidence did not establish all of the terms of his employment. He *1515 presented evidence the employment agreement included the provision that he would only be terminated in accordance with the four-step disciplinary procedures spelled out in the manual, but which were not followed in his case. Nonetheless, on November 13, 1995, the referee issued a written order purporting to grant the defendants' motion and to dismiss plaintiff's first and second causes of action with prejudice.[10] Plaintiff did not file any objection with the trial court to this order by the referee, although he does argue that he is nonetheless permitted to attack such order because the original reference order was void.[11]
On March 4, 1996, the second of the three summary adjudication motions was heard by the referee. This motion by the defendants attacked the third, fourth and eighth causes of action of plaintiff's complaint:
(1) Defendants contended that there was no admissible evidence that they had made any misrepresentation about plaintiff following the termination of his employment which prevented (or attempted to prevent) plaintiff from obtaining employment in violation of Labor Code section 1050 (third *1516 cause of action). Plaintiff presented evidence that he lost out on four employment opportunities following his termination as the result of false statements about him and his activities at FHP, which statements he claimed were made and broadcast by FHP officials;
(2) Defendants also argued that there was no admissible evidence that any of the defendants had made defamatory statements about plaintiff or, if they did, such statements were conditionally privileged (fourth cause of action). Plaintiff countered with evidence that many false statements had been made about him and that the defendants were liable therefore either directly or under the doctrine of respondeat superior and that no privilege was applicable because defendants had acted maliciously;
(3) Finally, defendants asserted that the defendant Kiskaden could not be held liable for interference with plaintiff's employment by FHP because he was an employee of FHP and at all times he was acting within the course and scope of that employment; thus, his acts were those of FHP and one party to a contract cannot interfere with or induce a breach of that contract (eighth cause of action). Plaintiff ignored the principle of law underlying defendants' argument and simply argued that the evidence of Kiskaden's actions demonstrated a design and intent to terminate plaintiff's employment.
The referee, on March 20, 1996, ruled in defendants' favor as to all three causes of action, again finding that plaintiff did not have a viable claim. He granted defendants' motion and ordered the dismissal with prejudice of plaintiff's third, fourth and eighth causes of action.[12]
On March 7, 1996, after the referee had heard defendants' second motion for summary adjudication, but before he had filed his March 20 ruling *1517 thereon, plaintiff filed an ex parte application with the trial court to modify the original reference order of June 7, 1995. Plaintiff requested that the order be modified to preclude the referee from hearing or deciding any summary judgment motions. The court denied the motion on March 8, 1996, essentially on the grounds that plaintiff had agreed to the reference and had not acted with reasonable diligence in raising objections to the hearing of dispositive motions by the referee.[13]
Finally, on March 25, 1996, the referee heard defendants' third motion for summary adjudication which was directed at the last remaining cause of action, the fifth, in which plaintiff had alleged his tortious wrongful discharge claim. Defendants based their motion on the contention that plaintiff had presented no admissible evidence establishing that he was terminated in violation of any statute designed to protect or promote a fundamental public policy, and therefore no cause of action would lie. Plaintiff responded with evidence that FHP officials had engaged in activity which was either unlawful, represented a serious conflict of interest, violated shareholder interests or enabled violations of various federal securities laws. Plaintiff claimed that he acted as a "whistleblower" and that was what caused his termination and that, as a result, he was entitled to have his case presented to a jury. These were the arguments which plaintiff presented in his opposition papers filed with the referee; however, he did not personally attend the hearing on defendants' motion which the referee held on March 25, 1996. He declined *1518 to attend in protest of the referee's assertion of authority under the reference order of June 7, 1995.[14]
On April 2, 1996, plaintiff filed objections to the referee's second ruling granting a summary adjudication to plaintiff's third, fourth, and eighth causes of action. In this pleading, plaintiff raised for the first time a formal direct objection to the appointment of a referee to hear motions for summary judgment. Plaintiff argued that the reference order was not valid and asked for a hearing before the trial court on defendants' summary adjudication motions. As we discuss below, the trial court denied this request on May 3, 1996.
Also on April 2, 1996, the referee signed and filed his third and final order granting defendants' motion for summary adjudication as to plaintiff's fifth cause of action. The referee ordered that plaintiff's last remaining cause of action be dismissed with prejudice.[15]
*1519 Following receipt of the referee's order of April 2, plaintiff again filed objections to the referee's authority to make such an order and requested a full hearing before the trial court on the defendants' several motions for summary adjudication. The court granted a hearing on the issues raised by plaintiff's objections to the referee's authority, and that hearing was held on April 12, 1996. Plaintiff argued that the appointment of a referee to hear law and motion matters, including summary judgment motions, amounted to a general reference which could not be done without the parties' consent. That is, that the reference order of June 7, 1995, to the extent that it authorized the referee to hear defendants' three summary adjudication motions, went beyond the court's jurisdiction and was therefore void from the inception. After hearing counsel's comments and argument, the court took plaintiff's request and objections under submission.[16]
*1520 Thereafter, the court, on May 3, 1996, issued a minute order entitled "Ruling on Orders Granting Defendant FHP's Motions For Summary *1521 Adjudication Filed March 20, 1996 and April 2, 1996." In that order,[17] the court confirmed, approved and adopted the findings and orders of the referee as the findings and orders of the court. On June 13, 1996, the court signed and filed a final judgment in accordance with the findings and orders made by the referee. Plaintiff has filed this timely appeal.

ISSUES PRESENTED
Although the parties extensively argue both the procedural and substantive merits of the summary judgment entered in defendants' favor on plaintiff's second amended complaint, we will focus only on the procedural questions which have been raised. The first is whether the trial court's reference of this matter to a designated referee under Code of Civil Procedure section 639, subdivision (e), without the express written consent of both parties, empowered the referee to hear and (effectively) determine the motions for summary adjudication filed by the defendants. The second question is whether plaintiff's failure to object to such reference until after the referee had heard (but not decided) the second of defendants' three motions now precludes him from raising the issue. As we explain below, we answer both of those questions in the negative.

DISCUSSION

1. General and Special References

A reference by the trial court involves the sending of a pending action or proceeding, or some issue raised therein, to a referee for hearing, determination and report back to the court. The procedure is most commonly employed where complicated accounts can more conveniently be examined or taken outside of court, and to resolve discovery disputes or certain types of family law issues. (See generally, 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 58, p. 457; De Guere v. Universal City Studios, Inc. (1997) 56 Cal. App.4th 482, 496-497 [65 Cal. Rptr.2d 438].)
*1522 The Code of Civil Procedure[18] provides for two types of reference. A "general" reference is conducted pursuant to section 638, subdivision (1),[19] which authorizes the trial court to refer any or all issues to a referee for trial and determination, provided that the parties have agreed thereto in an agreement filed with the clerk or judge or entered in the minutes or docket. (De Guere v. Universal City Studios, Inc., supra, 56 Cal. App.4th at pp. 496-497; Ruisi v. Thieriot (1997) 53 Cal. App.4th 1197, 1208 [62 Cal. Rptr.2d 766].) Such agreement of the parties is required in order to comport with the constitutional prohibition against delegation of judicial power. (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208.) The finding and determination of the referee upon the whole issue must stand as the finding of the court and judgment may be entered thereon in the same manner as though the matter had been tried by the court. (§ 644; Estate of Bassi (1965) 234 Cal. App.2d 529, 536 [44 Cal. Rptr. 541].)
A "special" reference is one conducted pursuant to section 639. The findings of the referee are advisory only, and do not become binding unless adopted by the court; the court must independently consider the referee's findings before acting. (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208.) The consent of the parties is not required; however, such nonconsensual reference is authorized under section 639 only in certain specified circumstances: "(a) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein. [¶] (b) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect. [¶] (c) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action. [¶] (d) When it is necessary for the information of the court in a special proceeding. [¶] (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." (§ 639.)
This statutory scheme carefully preserves the distinction which must be maintained between general and special references in order to comply with *1523 the constitutional mandate regarding the delegation of judicial power. (1) "[A] general reference has binding effect, but must be consensual, whereas a special reference may be ordered without consent but is merely advisory, not binding on the ... court. [Citations.]" (Aetna Life Ins. Co. v. Superior Court (1986) 182 Cal. App.3d 431, 436 [227 Cal. Rptr. 460].)

2. The Trial Court's Reference in This Case Was Beyond Its Authority

(2a) The record clearly discloses that the trial court purported to make a reference under section 639, subdivision (e). The reference was made in the context of a discovery dispute which was apparently both prolonged and acrimonious. There is nothing in the record, other than one phrase in the court's written order, which made any reference to matters other than discovery issues. It certainly was not discussed with counsel at the time that the court decided to make the reference; and the written order itself bore the title: "Order Appointing Special Referee to Supervise, Hear and Determine Discovery Matters [639(e) C.C.P.]" (Italics added.) The trial court plainly decided to send the case to a referee to resolve pending discovery matters. However, shortly after the reference, the referee commenced to hear and determine three separate summary adjudication motions which effectively disposed of plaintiff's case.
Without plaintiff's consent, the trial court had no authority to make a general reference. (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208; Murphy v. Padilla (1996) 42 Cal. App.4th 707, 714 [49 Cal. Rptr.2d 722].) Hearing, considering and deciding dispositive motions is not one of the special references authorized by section 639 which the court may make without consent. Clearly, plaintiff did not consent to a general reference. There certainly was no written agreement to that effect nor does the record reflect any agreement to a general reference entered in the court's minutes or docket.[20] The only power the court had, therefore, was to make a special reference under section 639. However, such power is limited to those specific matters set out in that section. "The trial court has no authority to assign matters to a referee ... for decision without explicit statutory authorization. [Citations.]" (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208, fns. omitted, italics added.) Concededly, as we have already noted, hearing and ruling upon a summary judgment motion is not "explicitly authorized" by the statute.
We cannot distinguish this case from Aetna Life Ins. Co. v. Superior Court, supra, 182 Cal. App.3d 431. That matter involved an action between an *1524 insurance company and its insured for tortious breach of an insurance contract where the trial court assigned all law and motion summary judgment proceedings to a referee without the written consent of the parties. After the referee granted the insured's motion for summary adjudication of certain coverage issues, the insurer sought a writ. In making the assignment, the trial court, as in the case here, had relied on section 639[21] and specified in its order that the referee was a "special" referee. The order required the referee "to report findings and make recommendations to the court within ten (10) days following the determination of each motion."
After the referee's written report had been submitted to the court, the insurer asked the trial court to treat the referee's findings (which stated that relevant policy exclusionary language was ambiguous) and conclusion (that coverage was not excluded by the policy) as advisory and set a hearing on the referee's report. The court denied this request and ordered that the findings and conclusion of the referee were without substantial controversy and "`shall be deemed established.'" (182 Cal. App.3d at p. 435.)
On the insurer's petition, the Aetna Life court issued a writ of mandate. The court noted that the reference order purported to be a special reference. "Yet, the superior court treated the referee's findings and conclusions of law as binding and determinative of the issue. No rehearing procedure was provided and there is no evidence the superior court judge who made the final order ever considered the matter himself, independently of the referee's decision. He simply entered judgment on the referee's report as though it were a binding decision of the court itself. Yet, as we have stated, the reference was not a consensual general reference, the record being wholly lacking in any evidence of a written agreement of the parties to such a binding general reference. We view this action as an abdication of judicial responsibility not authorized by law and contravening the constitutional restrictions upon the exercise of judicial power." (182 Cal. App.3d at p. 436, italics added.)
The trial court in this case did essentially the same thing. After receiving the referee's written reports granting defendants' three summary adjudication motions, and ordering dismissal of plaintiff's several causes of action with prejudice, it held a hearing but only on plaintiff's objection to the reference process.
On April 12, 1996, the court listened to counsel's argument on the question of whether the original reference order of June 7, 1995 (to the *1525 extent that it purported to authorize the referee to hear and determine summary judgment motions) had exceeded the court's authority. It is clear from the record that this was not a de novo hearing on defendants' original motions, but only a hearing on (1) plaintiff's objections to the process and (2) the question of whether the trial court should conduct a hearing on defendants' motions. The court took these issues under advisement and three weeks later issued a minute order in which it "confirmed, approved and adopted" the findings and orders of the referee as the findings and orders of the court.
While it is true that the court's minute order recited that the court had "carefully read and considered the documents submitted on the motions and the orders and the objections filed thereto," it is not at all clear that the court actually conducted a de novo review of the defendants' motions and plaintiff's opposition thereto. Indeed, reading the record as a whole, the inference which we feel compelled to draw is that it did not do so, but rather simply adopted the referee's reports as its own. At the very least, the trial court's actions in this matter give the appearance of an unconstitutional delegation of judicial power and abdication of judicial responsibility. If the trial court actually engaged in a de novo review, consideration and resolution of defendants' motions, then it owed to the parties, and to any reviewing court which later might be called upon to consider the case, the obligation to ensure that the record clearly so reflected.[22] Given the state of this `record, and all of the circumstances of the case which we have exhaustively described, we are unwilling to assume that defendants' motions were independently considered and decided by the trial court.[23] We thus reject defendants' principal argument that the recitations in the court's order of May 3, 1996, distinguish this case from Aetna Life. As did the reviewing court in that case, we conclude that the reference here for the purpose of hearing and determining summary judgment motions was beyond the trial court's authority.

*1526 3. Plaintiff Did Not Waive Nor Is He Estopped to Assert His Right to Object to the Reference

Defendants argue that plaintiff's failure to initially object to the court's June 7, 1995 reference to Judge Nelson, and his failure to raise any objection to the actions of the referee until March 7, 1996, amounted to an acquiescence in, or agreement to, the court's order, and constituted a waiver of any right to assert the objections raised by this appeal. They also argue that, by virtue of his acts and omissions, plaintiff should be estopped to assert such objections. At the very least, defendants argue, plaintiff should be bound by his counsel's off-the-record consent to the assignment to Judge Nelson of the first of the defendants' three summary adjudication motions. We reject each of these arguments.
First, the record is clear that at the hearing where the trial court announced its decision to send the matter to a referee, both the context and purpose of the trial court's action was to facilitate the resolution of pending discovery disputes. Indeed, the trial court, both in its statements on the record and in the title of its written order, indicated that this was a special reference under section 639, subdivision (e). There was no reason for the plaintiff to raise any objection. As his counsel argued, both below and to this court, "plaintiff had no objection" to a special reference of discovery issues. Both the defendants and the trial court, in its March 8, 1996, order denying plaintiff's ex parte application to modify the order of June 7, 1995, make much of the trial court's statement on June 7: "Let's give discretion to the referee, let him make the judgment."[24] We find the reliance on this isolated statement to be, at a minimum, disingenuous. The record plainly demonstrates that the quoted remark was made in response to plaintiff's questions about the scope of Judge Nelson's authority to award fees and sanctions against defendants for their failure to make discovery. The trial court was not purporting to give the referee the power to make or render a judgment, but rather was simply confirming that the award of fees or sanctions for discovery abuse would be left to Judge Nelson's "judgment," that is, to his discretion.[25]
Second, any general reference to a referee without plaintiff's written or on-the-record oral consent is an act in excess of the trial court's jurisdiction. *1527 (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208; Murphy v. Padilla, supra, 42 Cal. App.4th at p. 714.) Section 638 very clearly requires a written agreement to a general reference, or at least an agreement made in open court which is entered in the minutes or docket of the court. Neither the statutory language nor any case authority which we have been able to discover recognizes that such agreement may be "implied," or accomplished "de facto," as the trial court sought to do in this case. In addition, as we explain below, we reject defendants' argument that plaintiff's off-the-record consent to the referee hearing defendants' first summary adjudication motion was effective to give the referee the power to hear that motion or the other two which followed; such off-the-record consent did not operate as a waiver of plaintiff's right to object to the general reference or as the basis for an estoppel to assert such right.[26]
(3) It is well settled that "`"Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations]. The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and `doubtful cases will be decided against a waiver.'"' [Citations.]" (DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd. (1994) 30 Cal. App.4th 54, 60 [35 Cal. Rptr.2d 515].) "The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right." (Ibid.) While it is true that this record presents some evidence of an intent on the part of the plaintiff to relinquish his right to assert a lack of compliance with section 638, it is at best equivocal and anything but clear and convincing. However, our rejection of defendants' claim of waiver does not rest on the quantum of evidence supporting that claim, but rather on public policy grounds.
*1528 (4) The doctrine of estoppel is made up of four elements: "`(1) the party to be estopped must be apprised of the facts; (2) [it] must intend that [its] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) [the other party] must rely upon the conduct to [her] injury.' [Citations.]" (Cole v. City of Los Angeles (1986) 187 Cal. App.3d 1369, 1374 [232 Cal. Rptr. 624]; see also Hair v. State of California (1991) 2 Cal. App.4th 321, 328-329 [2 Cal. Rptr.2d 871].) In this record, we can find no evidence of any detrimental reliance by defendants on plaintiff's failure to make a more timely objection to the referee's hearing and con- sideration of defendants' dispositive motions. There was no change of position by defendants. Their preparation and presentation of the motions prior to plaintiff's initial objection papers (filed on March 7, 1996) were no different than would have been the case had plaintiff asserted the objection earlier. Plaintiff's off-the-record consent to the referee's consideration of defendants' first motion apparently took place after defendants had already prepared, filed and calendared that motion. Certainly, there is nothing in this record to reflect that defendants in any way detrimentally relied or acted upon the referee's single ruling made prior to plaintiff's initial objections on March 7, 1996. However, as we do with defendants' waiver argument, we reject the application of estoppel to bar plaintiff's objection to the general reference not simply because there is no substantial evidence to support it, but also, and more significantly, because important public policy considerations compel such a result.
In evaluating defendants' contentions regarding waiver and estoppel it is useful to distinguish this case from In re Horton (1991) 54 Cal.3d 82 [284 Cal. Rptr. 305, 813 P.2d 1335]. In that case, the Supreme Court held that the actions of an attorney for a criminal defendant in trying the case before a commissioner, without first obtaining a formal written consent to such commissioner signed by the defendant, amounted to a "tantamount stipulation" sufficient to satisfy the constitutional requirement that a temporary judge must be authorized to try the case. The holding in Horton was based on the following circumstances. First, defense counsel in Horton had the authority to stipulate to all procedural matters, including a trial before a commissioner, and did so stipulate. (Id. at pp. 90-91, fn. 2, 92-95.) Second, the statutory scheme (§ 259) provided that the constitutionally recognized position of "temporary judge" (Cal. Const., art. VI, § 21) may be filled by a commissioner appointed for that purpose. Third, in Horton, both counsel intended that defendant's trial be conducted by the commissioner and the execution of a written consent by the defendant was inadvertently overlooked.[27] Fourth, defendant's attorney fully participated in and vigorously *1529 tried the case before the commissioner and no objection was raised to such procedure until after defendant had been found guilty, and then not by direct attack on appeal but by collateral attack through a petition for habeas corpus.
Here, we have no such circumstances. First, while it is true that an attorney has the power to consent to procedural matters,[28] here, unlike in Horton, the statutory scheme is very specific as to the nature and method by which a party must consent to a general reference. Such consent must be in writing and filed with the clerk or, if oral, the consent must be entered on the record. There is no claim that such statutory requirements were followed or even attempted in this case. Second, no statute provides that privately-paid referees may be appointed, absent the statutorily specified consent, to fill the constitutionally recognized position of temporary judge. (Cf. §§ 259, 638 & 639; see also Cal. Rules of Court, rule 244(a).) Third, there is no evidence in this record that either party had any intention of agreeing to a general reference. Instead, the evidence shows that the parties understood only that a referee would be appointed under section 639, subdivision (e), to resolve a discovery dispute. Thus, unlike the absence of the defendant's formal written stipulation in Horton, the absence of plaintiff's counsel's written agreement or oral consent entered on the record to a general reference was not because an intended consent was inadvertently omitted, but because (1) the reference was framed as the kind of reference which did not require such an explicit consent, and (2) the trial court therefore never had reason to request, nor the parties reason to grant, the requisite consent. Finally, unlike the defendant's attorney in Horton, plaintiff's counsel did not vigorously litigate the case on its merits and wait until after he had lost the case before objecting to the referee's adjudication of the nondiscovery motions; instead, he repeatedly voiced his objections to the trial court after the referee had ruled on the first of the three motions for summary adjudication, and again on direct appeal.[29]
Even if there were a factual basis for the application of waiver or estoppel, we would not apply them to the circumstances presented by this case. *1530 (5) While it is true that, "[w]hen ... the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction [] [Citations.]" (In re Griffin (1967) 67 Cal.2d 343, 347 [62 Cal. Rptr. 1, 431 P.2d 625]), it is also true that, "[w]hether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when `[t]o hold otherwise would permit the parties to trifle with the courts.' [Citation.] On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.] Substantive rules based on public policy sometimes control the allowance or disallowance of estoppel." (Id. at p. 348, italics added.)[30]
Here, as already noted, plaintiff did not wait until all that remained was a collateral attack, nor, for that matter, did he even wait until he filed this *1531 appeal to raise the issue of the referee's right to determine dispositive motions in addition to discovery matters. Instead, he objected in the trial court, and he did so prior to the time that the referee announced his ruling on defendants' second motion or had heard or considered defendants' third motion. His objections provided ample opportunity and notice to the trial court to enable it to conduct a proper independent review and consideration of the defendants' three summary adjudication motions. Thus, it cannot be concluded that plaintiff's actions amounted to a "trifling" with the judicial system.
More significantly, to ratify, on the grounds of either waiver or estoppel, the general reference made by the trial court in this case would effectively undermine two important public policies: (1) the constitutional prohibition on improper delegation of judicial power, and (2) the principle that the courts are open to litigants and the cost of operating them is borne as a public expense as they are an integral and essential part of our democratic form of government. Allowing trial courts routinely to shift their responsibilities to private judges unfairly requires the litigants, who are already paying taxes to fund the operation of the courts, to also bear the very substantial cost of private judges, in addition to all other litigation expenses. If not circumscribed, such a burden ultimately could discourage persons with meritorious claims from pursuing them in court because they cannot afford to do so.
Strict enforcement of the statutory requirement for a written agreement or oral consent entered on the record serves both of these important public policies because it (1) prevents general references to privately paid referees without the formal and express consent of the parties, (2) protects access to the courts and (3) counters any perception that justice is only available to those who can afford to purchase it. Given that (1) compliance with the statutorily imposed consent requirements imposes no significant burden on either the trial court or the litigating parties and (2) recognition of the doctrines of waiver and estoppel to avoid such requirements would serve only to undercut and interfere with the important policies which they further, we believe that the jurisdictional defect presented by this record should not be subject to waiver or avoidance by estoppel irrespective of the evidence of plaintiff's initial acquiescence and limited participation in the proceedings before the referee. Our determination that plaintiff neither waived his right to object to the reference nor is estopped from asserting it is "in harmony with the proper operation" of the judicial system. (In re Griffin, supra, 67 Cal.2d at p. 348.)

CONCLUSION
(2b) We conclude that the trial court's reference to Judge Nelson of any matters other than those explicitly authorized under section 639, subdivision *1532 (e), was in excess of its jurisdiction and therefore voidable.[31] However, because of the nature of this jurisdictional error, its significance to the functioning of the courts and to the public in general, and the importance of the public policies furthered by the strict enforcement of the provisions of section 638, we do not treat plaintiff's tardy objections and initial and limited participation in the proceedings before the referee as a waiver of, or an estoppel to object to, the lack of statutorily required consent to the reference. Therefore, we will return this matter to the trial court. Any renewal by defendants of their summary adjudication motions should be filed, noticed, heard and decided in accordance with the provisions set out in section 437c and in a manner which is consistent with the views expressed herein.
While we recognize the burden of the heavy caseloads carried by trial court judges, we must express a word of caution. The parties are entitled to the decision of the trial court with respect to each matter or issue presented by them except where they properly agree otherwise or a statute permits an appropriate reference. The apparently routine[32] practice of referring out law and motion matters without obtaining the parties' prior written or record consent cannot be justified however helpful it might be in calendar management. "Efficiency is not more important than preserving the constitutional integrity of the judicial process." (Aetna Life Ins. Co. v. Superior Court, supra, 182 Cal. App.3d at p. 437.)[33] In addition, resort to such measures "masks the true needs of the judiciary and is [even more] unwise" than the wholesale use of commissioners as temporary judges which was criticized by Division Seven of this district in Reisman v. Shahverdian (1984) 153 Cal. App.3d 1074, 1092 [201 Cal. Rptr. 194].
*1533 As we noted earlier, in reaching our decision we have not considered or addressed the substantive merits of defendants' motions and we express no opinion thereon. Indeed, the judgment rendered by the trial court in this case ultimately may prove to have been correct. But as we also said earlier, this case is about plaintiff's right to due process of law.

DISPOSITION
The summary judgment is reversed in its entirety and the matter is remanded to the trial court for further proceedings not inconsistent with the views expressed herein. Each party shall bear its own costs on appeal.
Klein, P.J., and Aldrich, J., concurred.
NOTES
[1] Leo Baumohl is now deceased, having passed away during the pendency of this appeal. Plaintiff's sister and sole survivor was appointed as his successor-in-interest by the trial court on February 25, 1998, for the purpose of prosecuting this action to conclusion. (See Code Civ. Proc., §§ 377.11, 377.31-377.33.) However, as a matter of both convenience and clarity, we shall refer to plaintiff in this opinion without regard to the substitution of parties.
[2] The facts which are relevant to the issues which we discuss are not in dispute. To the extent that there is a dispute with regard to the facts relating to the substantive merits of plaintiff's claims (we generally summarize such facts only for purposes of context), we rely on the facts as set out in the declarations submitted to the referee by plaintiff in opposition to defendants' motions.
[3] Labor Code section 1050 provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor."
[4] One of plaintiff's superiors, whom he claims engaged in the activities described in his complaint, is the individual defendant, Charles Kiskaden.
[5] Plaintiff does not contest that ruling in this appeal.
[6] While peripheral to our main concern, we cannot help but note that this procedure for selection of the referee did not comply with the mandate set out in California Rules of Court, rule 244.2(b), which is expressly applicable to references made by court order. That subdivision provides, in relevant part: "In selecting the referee, the court shall accept nominations from the parties and provide a sufficient number of names so that the parties may choose the referee by agreement or elimination. The parties may waive this procedure by a waiver noted in the minutes...." (Italics added.)
[7] Code of Civil Procedure section 639, in relevant part, provides: "When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference in the following cases: [¶] ... [¶] (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." (Italics added.)
[8] The balance of the relevant part of the order provided:

"POWERS OF SPECIAL REFEREE
"In order to accomplish this purpose, the Special Referee shall have the following powers:
"1. To set the date, time and place of all hearings necessary as agreed upon by the parties, or in the event that no agreement can be reached, the Special Referee shall fix the date, time, and place of such hearings.
"2. To direct the issuance of subpoenas; preside over hearings, take evidence, rule on objections, motions and other requests made before, during and after hearings with the same power as if the Court were to preside thereat (except for the power of contempt, which is specifically reserved to this Court).
"RECORD AND REPORT
"1. All proceedings before the Special Referee shall be reported in writing to this Court within 20 days from the completion of such hearing, with a proposed order on the issues presented at hearing and any recommendations for the imposition of sanctions.
"2. Objections to the report of the Special Referee shall be filed with the Clerk of this Court within fifteen (15) days after the report itself is mailed to counsel, that any party who objects to the report shall serve and file notice of a request for a hearing with this Court, and that copies of the objections and any responses shall be served upon the referee."
[9] By our summary characterizations of the competing showings made by the parties with respect to each of these motions we intend no expression of opinion as to whether or not there exist any disputed issues of material fact. Our purpose is only to provide context for our consideration of the orders of the referee and the subsequent actions taken by the trial court.
[10] In the relevant portion of his order, the referee stated as follows:

"After full consideration of the evidence, the separate statements submitted by each party, the authorities submitted by counsel, as well as counsel's oral argument, the Court finds that there are no triable issues of material fact as to the First and Second Causes of Action and FHP is entitled to summary adjudication as a matter of law for the following reasons:
"1. That the terms of Plaintiff's employment were governed by an express integrated contract under which he was an at-will employee whose employment was terminable at any time with or without cause;
"2. That Plaintiff's at-will status precludes Plaintiff's First Cause of Action for breach of contract based upon a termination without cause. Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 446, 620 (1995) [41 Cal. Rptr.2d 329].
"3. That Plaintiff's Second Cause of Action for breach of an implied covenant of good faith and fair dealing is also precluded by reason of the express at-will provision in his contract of employment.
"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that said Motion for Summary Adjudication is GRANTED, and the First and Second Causes of Action in Plaintiff's Second Amended Complaint shall be, and hereby are, dismissed with prejudice."
Two comments should be made about this order: (1) It does not satisfy the requirements of Code of Civil Procedure section 437c, subdivision (g), regarding the description of supporting evidence and (2) its reference to the existence of an "integrated" agreement of employment is not supported by any evidence in the record.
[11] The record reflects that, at the time of the June 7, 1995, reference order, this first motion for summary adjudication by the defendants was pending before the trial court. Following the appointment of Judge Nelson as referee, there apparently was an unrecorded discussion in chambers with the trial court at which plaintiff's counsel either requested or approved the reference of this motion to Judge Nelson. (See fn. 16, post, for quoted colloquy between plaintiff's counsel and the court which took place at hearing on Apr. 12, 1996.) We note that such consent, which was given only with respect to the first of defendants' three motions, was not made or documented in accordance with the specific requirements of Code of Civil Procedure, section 638, which we discuss below.
[12] The relevant portion of the referee's order provides:

"The Referee has read and considered the Defendant's motion, memorandum of points and authorities, compendium of out-of-state authorities, transcript excerpts, separate statement, and declarations and [P]laintiff's opposition to Defendant's motion, his separate statement, declarations, additional statement of facts and objection to declarations, followed by Defendant's reply, response to purported additional facts, supplemental declarations, objections to Plaintiff's evidence, supplemental transcript excerpts, researched the authorities cited by counsel, and has concluded a lengthy hearing consisting of the presentations of counsel.
"After a full consideration and re-examination of all of the above, the Special Referee finds that there are no triable issues of material fact as to the Third, Fourth, and Eighth Causes of Action, and Defendants are entitled to summary adjudication as a matter of law for the following reasons:
"(i) Plaintiff's purported Third Cause of Action against FHP and Kiskaden for violation of California Labor Code section 1050 has no merit as a matter of law because there is no admissible evidence that Defendants made any misrepresentations regarding Plaintiff to any potential employer or with the intent to prevent Plaintiff from obtaining employment. (See Exhibit 1 hereto, Excerpts from Defendants' Separate Statement of Undisputed Facts and Supporting Evidence: Facts 1 through 12.)
"(ii) Plaintiff's purported Fourth Cause of Action against FHP and Kiskaden for defamation has no merit as a matter of law because there is no admissible evidence that Defendants made any defamatory statements regarding Plaintiff and, moreover, the alleged statements would have been privileged. (See Exhibit 1 hereto, Defendants' Separate Statement of Undisputed Facts and Supporting Evidence: Facts 13 through 20.)
"(iii) Plaintiff's purported Eighth Cause of Action against Kiskaden for interference with Plaintiff's employment contract with FHP has no merit as a matter of law because Kiskaden was acting within the course and scope of his employment with FHP when he discharged Plaintiff and, accordingly, cannot be held liable for unlawfully interfering with Plaintiff's employment contract. (See Exhibit 1 hereto, Defendants' Separate Statement of Undisputed Facts and Supporting Evidence: Facts 21 through 22.)
"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendants FHP, Inc. and Charles E. Kiskaden's Motion for Summary Adjudication is GRANTED, and the Third, Fourth, and Eighth Causes of Action in Plaintiff's Second Amended Complaint are hereby DISMISSED, with prejudice."
[13] In its minute order of March 8, 1996, the trial court stated, in relevant part: "This motion, filed on March 7, 1996 and after the reference heard Defendants Second Summary Adjudication of Issues, has not been made with reasonable diligence. [CRC Rule 244.2(c).] Further, although this Court's order only referred to CCP 639(e), since the parties had agreed to the terms outlined by the Court this was a de facto order under CCP 638. This Court clearly stated to the parties, "Let (the reference) make the judgment." [Record citation omitted.] Plaintiff's request for relief has been waived by the failure to take exception thereto in a timely manner. Consequently, Plaintiff is estopped from objecting at this late stage in the proceedings as no objection was made with reasonable diligence."
[14] In a letter to the referee dated March 25, 1996, plaintiff's counsel stated:

"In accordance with your request at our telephone conversation today, this letter provides you with Plaintiff's position as to the hearing on Defendants' motion for summary adjudication scheduled for today: As we stated in our opposition papers, Plaintiff does not concur that you have the authority or jurisdiction to hear this matter, and accordingly, we have elected not to appear at your office. However, Plaintiff does not waive his right to argue the merits of this motion before Judge Dunn of the Los Angeles Superior Court.
"Further, on March 4, 1996, I informed both you and Ms. Saxe I will not be appearing at today's hearing, and both you and Ms. Saxe stated your agreement with this. I was therefore surprised to hear today that Ms. Saxe was present at your office."
[15] The referee's order, in relevant part, provides:

"The Referee has read and considered the Defendant's motion, separate statement of undisputed facts and supporting evidence in support of the motion, the memorandum of points and authorities, appendix of statutes, appendix of transcript excerpts, compendium of out-of-state authorities, and declarations of Deborah Saxe, Charles E. Kiskaden, Marguerite O'Toole, Burke Gumbiner, and Charlotte Patterson; as well as Plaintiff's opposition to Defendant's motion, objections to evidence, and his separate statement in opposition to Defendant's motion. Further, the Referee has read and considered Defendant's reply brief, reply to Plaintiff's response to Defendant's separate statement, supplemental declaration of Deborah Saxe, objections to Plaintiff's evidence and request to strike Plaintiff's objections, supplemental appendix of transcript excerpts, and Defendant's response to Plaintiff's purported additional facts. The Referee has researched the authorities cited by counsel, and has considered the presentation of Defendant's counsel.
"After a full consideration and re-examination of all of the above, the Special Referee finds that there are no triable issues of material fact as to the Fifth Cause of Action, and Defendant FHP, Inc. is entitled to summary adjudication as a matter of law for the following reasons: .... [¶].... [in the omitted material the referee described his findings and conclusion as to each of plaintiff's theories as to why a violation of a statute expressing a fundamental public policy had occurred; tracking arguments of the defendants, the referee concluded in each instance that there was no admissible evidence of the violation of any statute embodying a fundamental public policy in the termination of plaintiff].
"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the motion of Defendant FHP, Inc. for Summary Adjudication is GRANTED, and each of the claims set forth in the Fifth Cause of Action in Plaintiff's Second Amended Complaint shall be, and hereby is, dismissed with prejudice."
[16] The colloquy between counsel and the court is instructive. The following is taken from the relevant portion of the court reporter's transcript of the hearing on April 12, 1996:

"[Plaintiff's Counsel]: I believe, as we stated in our ex parte papers, that the referee which was appointed under 639, that order exceeded the court's jurisdiction.
"The Court: Yes.
"[Plaintiff's Counsel]: Now, we did not waive our objection to that appointment by merely appearing before the referee. We never agreed to that referee under 638, as the court might have indicated in the minute order. Merely by me saying on the record `Thank you, your honor' 
"The Court: Well, let me ask you, because when the reference was made you knew the reference had been made. I told you I'm going to refer this to a referee and I told you who.
"[Plaintiff's counsel]: For discovery purposes, your honor. That's what it was for.
"The Court: I don't think that's necessarily the case, but we'll talk about that.
"But let's put that aside for a moment and talk about the reference itself. At the time that I made the reference I told you who the referee was going to be, and there was no objection.
"[Plaintiff's counsel]: There were no objections.
"The Court: Nobody said a word.
".... .... .... .... .... .... ....
"[Defendants' counsel]: Yes, your Honor. As I recall, what you did was to ask me and Mr. Romano if we had anybody to suggest, and we said we did not. You said, well, then we will send it out to Judge Nelson.
"The Court: That's what I normally do.
"[Defendants' counsel]: That's what you did.
"The Court: And I have to confess to you that, you know, your recollection of this case  I just cannot imagine that I would impose a referee on attorneys. All you had to do, and although my memory does not serve me well right now, but I do know that my procedure is to say, look, I am going to send this out to Judge Nelson, is that all right, or do you have any objections, or do you have any other persons that you would prefer. And when I don't get a response my assumption is that the referee is all right.
"And what's bothering me about that is that it seems to me that what the objection here is is to what the referee did and not really what  who he was, because there was never any statement at the time that I want an opportunity to formally submit 3 names and have counsel submit 3 names, because that happens all the time, okay.
"[Plaintiff's counsel]: Your honor, the court's recollection is correct in that we did not ask at the time. And the only issue is whether or not  I believe that the court appointment process was not in compliance with the California rules of court on that point.
"The Court: I understand.
"[Plaintiff's counsel]: So, the issue is did we waive it. I don't believe we waived it. We do object to the referee handling the summary judgment motion.
"The Court: Oh no, that's a different issue. But I'm talking about the reference itself.
"[Plaintiff's counsel]: I believe, your honor, that the procedure for reference did not follow the California rules of court or statutory requirements for statute appointment, and it might well be we did not raise objection on the record on that point, but I don't believe that we waived our objection.
".... .... .... .... .... .... ....
"[Plaintiff's counsel]: Basically, your honor, we had no objection to the referee having discovery motions. We have objections, and our concerns grew every time we prepared [sic] before the referee, as to his ability to conduct dispositive motions in this case.
".... .... .... .... .... .... ....
"[Plaintiff's counsel]: We believe this particular referee, your honor, and I can just state on the record based on my observation of this referee's conduct on the summary adjudication, is unqualified. I believe he is biased, and I don't think he is qualified to rule on dispositive motions on cases such as this. This is a complicated case.
"The Court: Oh, I know it's complicated. That's one of the reasons I sent it out to a referee.
"[Plaintiff's counsel]: I understand that. And, like I said, your honor, going back to the point which we discussed, which was we never consented to him hearing the summary adjudication motion, but going beyond that, your honor 
"The Court: Let's go beyond that.
"[Plaintiff's counsel]: We have stated pursuant to the court's order of reference objections to the referee's rulings on the last two summary adjudication motions, and what we would like to do, your honor, is have a hearing de novo essentially before the court on those motions where the record can be made as to the court's ruling, a record can be made on evidentiary objections so that the case is clear, clean, however way the court rules, and either party can proceed on that basis. [¶] I don't believe today is the hearing day, by the way, your honor.
"The Court: No certainly not, if there is going to be a hearing. [¶] Do you have anything further?
"[Plaintiff's counsel]: No, your Honor.
".... .... .... .... .... .... ....
"[After listening to the argument of defendants' attorney, the court asked plaintiff's counsel if he had anything further]:
"[Plaintiff's counsel]: Yes your Honor. There was never  the appointment order was not under 638. It was under 639 and there was absolutely never agreement that  by us to submit this whole case to a referee for all purposes. I think the record has to be clear on that.
"The Court: Well, I don't know if the record is clear on that.
"[Plaintiff's counsel]: Your honor, the issue is whether or not we waived. It is  I am not going to deny that one of the conferences before court we asked to have the first hearing go before Judge Nelson. The issue is whether or not that is an appointment under the statute.
"The Court: I understand your position clearly; very clear.
"[Plaintiff's counsel]: That's all I have to state, your Honor.
"The Court: I'm going to look at this, take a close look at it and make sure because I don't want to wind up doing something and have to do it over again. So, I want to look at it and make sure that I'm correct and make sure that my order was specific enough and clear enough so that whatever ruling I make will preclude us from having to go over this again. So, let me spend more time reading your papers here and I will give you a ruling on this probably sometime early next week.
"[Plaintiff's counsel]: Thank you, your Honor."
[17] In its minute order of May 3, 1996, the court stated: "The Court having carefully read and considered the documents submitted on the motions and the orders and the objections filed thereto, now confirm, approve and adopt said findings and orders as the findings and orders of this Court. Further, Defendant is ordered to prepare a judgment in accordance with the orders granting summary adjudications, and submit it to the court for signature with copy to opposing counsel, within 10 days."
[18] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
[19] Section 638 provides:

"A reference may be ordered upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes or in the docket, or upon the motion of a party to a written contract or lease which provides that any controversy arising therefrom shall be heard by a reference if the court finds a reference agreement exists between the parties:
"1. To try any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision thereon;
"2. To ascertain a fact necessary to enable the court to determine an action or proceeding."
[20] As we pointed out in footnote 11, ante, the off-the-record "consent" of plaintiff's counsel to the referee hearing the first of the defendants' three summary adjudication motions did not satisfy these requirements.
[21] The trial court in Aetna Life based its reference order on section 639, subdivision (d), which authorizes a nonconsensual assignment to a referee "[w]hen it is necessary for the information of the court in a special proceeding."
[22] For example, a proper trial court order in these circumstances would (1) reflect that the trial court itself had read and considered all of the papers filed in support of and in opposition to each of the three summary adjudication motions, (2) set forth the trial court's ruling on all evidentiary objections properly raised by the parties, and (3) provide full compliance with the mandate of section 437c, subdivision (g). Such a detailed order would be particularly appropriate where, as here, the trial court did not allow the parties an opportunity to argue the motions orally.
[23] That plaintiff clearly had no opportunity to present oral argument in support of his opposition to defendants' motions is not a factor to which we have given any weight as it appears (and we assume without deciding) that a party has no absolute right to oral argument on a motion for summary judgment. (See Sweat v. Hollister (1995) 37 Cal. App.4th 603, 613-614 [43 Cal. Rptr.2d 399], disapproved on another ground in Santisas v. Goodin (1998) 17 Cal.4th 599, 609, fn. 5 [71 Cal. Rptr.2d 830, 951 P.2d 399]; cf. Rieger v. Reich (1958) 163 Cal. App.2d 651, 666-667 [329 P.2d 770] [abuse of discretion standard applies to decision not to allow oral argument].)
[24] In its written minute order of March 8, 1996, denying plaintiff's motion to modify the order of June 7, 1995, which motion objected to the reference, the trial court emphasized that, "This Court clearly stated to the parties [on June 7, 1995], `Let (the reference) make the judgment.'"
[25] In its order of March 8, 1996, the trial court engaged in a little revisionist history in attempting to recast the June 7, 1995 order as a general reference to which plaintiff had agreed: "Further, although this court's order [of June 7, 1995] only referred to CCP 639(e), since the parties agreed to the terms outlined by the Court this was a de facto order under section 638." (Italics added.) In our view, this is not a fair characterization of the June 7 order or its genesis.
[26] Some cases have suggested that an invalid reference is not even subject to waiver at all. For example, one case noted: "An invalid reference constitutes jurisdictional error which cannot be waived." (Ruisi v. Thieriot, supra, 53 Cal. App.4th at p. 1208; see also International Jet Ski Boating Assn., Inc. v. Superior Court (1991) 232 Cal. App.3d 112, 116 [283 Cal. Rptr. 33]; Aetna Life Ins. Co. v. Superior Court, supra, 182 Cal. App.3d at pp. 436.) However, we do not believe that this is an accurate statement of the law. While it is not uncommon for cases to state that an act in excess of a court's jurisdiction is void, only acts in excess of subject matter jurisdiction are void; acts in excess of other kinds of jurisdiction are merely voidable. (Conservatorship of O'Connor (1996) 48 Cal. App.4th 1076, 1088 [56 Cal. Rptr.2d 386].) The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it. In contrast, a court acts in excess of jurisdiction where, even though it has subject matter jurisdiction, it has no jurisdiction or power to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. (Id. at pp. 1087-1088.) The doctrines of waiver and estoppel apply only to voidable acts (i.e., to acts which are in excess of these other kinds of jurisdiction). (Id. at p. 1088.) Assigning a matter to a referee without first obtaining the statutorily required written consent filed with the clerk or entered in the minutes or docket is such an act; it is beyond the power of the court, but is not in excess of its subject matter jurisdiction and therefore is merely voidable.
[27] Furthermore, stipulation to a temporary judge must be made in writing unless the temporary judge is a court commissioner. (Cal. Rules of Court, rule 244(a).) Thus, in Horton, the lack of a written stipulation to the commissioner who served as a temporary judge was not contrary to law.
[28] The general rule is that, in both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters. (Blanton v. Womancare, Inc. (1985) 38 Cal.3d 396, 403 [212 Cal. Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].)
[29] This case is also distinguishable from cases such as Whoop, Inc. v. Dyno Productions, Inc.[*] (Cal. App.) and Lovret v. Seyfarth (1972) 22 Cal. App.3d 841, 860 [101 Cal. Rptr. 143], on which defendant expressly relies. Those were cases in which a party voluntarily participated in an arbitration proceeding, and there was no issue as to whether there had been compliance with a statutory prerequisite to valid consent.

[*] Reporter's Note: Opinion (B107774) deleted upon direction of Supreme Court by order dated August 12, 1998.
In Whoop, Inc., the issue was whether the defendant, Dyno Productions, was bound by an arbitration award, given its claim that it was not a party to the proceedings. Underlying the arbitration award were two lawsuits which had been resolved by a settlement which resulted in, as a term of settlement, a written stipulation and order for appointment of a referee pursuant to section 638. The issue was not whether there was proper consent to the referee, but whether Dyno Productions, which had been formed as an entity after the stipulation was made, was bound thereby.
In Lovret, the defendant Seyfarth participated without objection in an arbitration hearing, and did not seek to vacate the resulting arbitration award. Instead, she not only participated in the arbitration hearing, but also joined in the confirmation proceedings by filing cross-demands and causing workmen's and materialmen's liens on the property to be removed as a part of the judgment confirming the award. Later, she attempted to argue that she was not a party to the arbitration. The Lovret court held: "One submitting a counterclaim without resorting to an extraordinary remedy, available to him, may not claim after an adverse ruling in arbitration that the counterclaim was not an issue in the arbitration proceedings. [Citation.]" (Lovret v. Seyfarth, supra, 22 Cal. App.3d at p. 859.) The court therefore held her bound by the arbitration. However, it also concluded that because the parties had not stipulated to the commissioner who corrected and then confirmed the arbitration award, the matter would be reversed.
[30] In Griffin, the Supreme Court discussed the application of the doctrine of estoppel to bar a litigant from asserting judicial error based upon an exercise or power which was in excess of the court's jurisdiction. The trial court had revoked a defendant's probation and sentenced him to prison. It did so after the probationary period had expired. This, the trial court was without power to do. However, the reason that this occurred is that the court had previously granted the defendant a one-month continuance of the revocation hearing in order to allow him time to retain private counsel. As a result, the revocation order was entered after the probationary period had expired although the original hearing on the charged violation of probationary conditions had been timely scheduled. The Supreme Court held that the defendant could be estopped to argue that the trial court's action was in excess of its jurisdiction. In doing so, the court articulated the legal principles relevant to the application of the doctrine of estoppel to the case before us.
[31] Our decision should not be read as affecting any findings, recommendations or decisions which Judge Nelson may have made with respect to discovery issues which were presented to him pursuant to the order of June 7, 1995, and which were within the express authorization of section 639, subdivision (e).
[32] That this practice may be routine is suggested by the use of form orders, such as the one signed by the court in this case.
[33] In a slightly different but certainly related context, we recently were critical of an apparently increasing tendency of trial courts to refer matters properly before them to privately paid referees. "The justice system not only must be fair to all litigants; it must also appear to be so. The increasingly common practice of referring discovery matters, without regard to the financial burdens imposed upon litigants, threatens to undermine both of these goals." (Solorzano v. Superior Court (1993) 18 Cal. App.4th 603, 615 [22 Cal. Rptr.2d 401].) This problem was recognized and addressed by an amendment to California Rules of Court, rule 244.2(a) in 1996. We have the same reaction to the circumstances presented here. In our view, references by a trial court should be limited to those cases where not only is there no unfair financial burden imposed on the parties, but also where the parties are not deprived of the trial court's actual and direct participation in the decisionmaking process without their express consent where such consent is required and, where it is not, without substantial reasons therefor clearly articulated by the court.