[No. B168458. Second Dist., Div. Six. Apr. 20, 2004.]

CITIZENS FOR GOLETA VALLEY, AND GOLETA VALLEY LAND TRUST, Plaintiffs and Respondents, v.
HT SANTA BARBARA, et al., Defendants and Appellants.

COUNSEL

Hollister & Brace and Marcus S. Bird for Defendants and Appellants.

Law Offices of Marc Chytilo and Marc Chytilo for Plaintiffs and Respondents.

OPINION

**YEGAN, J.**—HT Santa Barbara and Great Universal Capital Corporation (GUCC) appeal from the judgment entered after a court trial in favor of Citizens for Goleta Valley (Citizens) and Goleta Valley Land Trust, respondents. The judgment requires appellants to provide a bond or letter of credit securing their payment obligations pursuant to a settlement agreement. We affirm.

### *Factual And Procedural Background*

In June 1991 GUCC and Hyatt Development Corporation entered into an agreement with Citizens settling all claims relating to a hotel project on Haskell's Beach in unincorporated Goleta, Santa Barbara County. Prior to the settlement, the parties' claims reached the appellate courts. (See *Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553 [276 Cal.Rptr. 410, 801 P.2d 1161]; *Citizens of Goleta Valley v. Board of Supervisors* (1988) 197 Cal.App.3d 1167 [243 Cal.Rptr. 339].) The settlement agreement provided for the development of the project by GUCC and the establishment of a trust fund by Citizens. The purpose of the trust fund was to acquire, restore, and preserve "open space lands, lands of recreational significance or lands of ecological or environmental significance . . . located in Goleta . . . ."

GUCC agreed to make a series of contributions to the trust fund totaling $5 million plus interest. The contributions included $3,000,000 to be paid in 24 quarterly installments over a six-year period ending in September 2006. Payment of the quarterly installments was to be secured by a bond or letter of credit: "Upon issuance of the final Certificate of Occupancy, GUCC shall deposit in the Settlement Escrow a bond or letter of credit securing GUCC's obligation to make the quarterly payments . . . ."

HT Santa Barbara is the successor in interest to GUCC. In September 2000 it purchased a $3,000,000 bond from Amwest Surety Insurance Company (Amwest) to secure payment of the quarterly installments. The obligee under the bond was Goleta Valley Land Trust, the trust fund established by Citizens pursuant to the settlement agreement. GUCC paid $180,000 for the bond. On

October 5, 2000, Goleta Valley Land Trust wrote a letter to HT Santa Barbara acknowledging receipt of the bond.

On June 7, 2001, a court declared Amwest insolvent and ordered that it be liquidated. The bond was cancelled effective July 6, 2001.

HT Santa Barbara has been paying the quarterly installments but refused respondents' demand that it provide a replacement bond. Respondents filed a complaint alleging causes of action for declaratory relief and for specific performance of appellants' obligation to provide a bond or letter of credit securing the quarterly payments.

The trial court ruled that appellants "are in default of their continuing obligation to maintain security to [respondents] under the Settlement Agreement and are required to provide [respondents] with an insurance bond or letter of credit."

### Standard Of Review

The parties agree that, because there is no conflicting extrinsic evidence, we must independently construe the settlement agreement. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].)

### The Settlement Agreement Requires Appellants To Provide A Replacement Bond Or Letter Of Credit

Appellants contend that, by initially depositing the $3 million bond, they fully performed their obligation under the settlement agreement to provide security for the quarterly payments. Appellants argue that the agreement should not be construed as requiring them to "maintain" the bond after they had purchased it. According to appellants, respondents bore the risk that Amwest might become insolvent.

"The purpose of the law of contracts is to protect the reasonable expectations of the parties." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 475 [47 Cal.Rptr.2d 12].) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "The interpretation must be fair and reasonable, not leading to absurd conclusions. [Citation.]" (*Transamerica Ins. Co. v. Sayble* (1987) 193 Cal.App.3d 1562, 1566 [239 Cal.Rptr. 201].) "The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable. [Citation.]" (*Strong v. Theis* (1986) 187 Cal.App.3d 913, 920–921 [232 Cal.Rptr. 272].)

"The contract must be construed as a whole, without giving a distorting emphasis to isolated words or phrases. [Citation.]" (*Transamerica Ins. Co. v. Sayble, supra,* 193 Cal.App.3d at p. 1566.)

■ Applying these principles, we conclude that appellants did not satisfy their security obligation under the settlement agreement by simply depositing a $3 million performance bond. The parties intended that the bond secure appellants' continuing obligation to make 24 quarterly payments over a six-year period. This objective would be achieved only if during the entire six-year period, respondents could look to the bond as a source of payment in the event of appellants' default. Thus, the parties contemplated that the bond would be valid until the last payment had been made.

Appellants selected the surety and bore the risk that it might become insolvent. Appellants' interpretation of the settlement agreement defeats the reasonable expectations of the parties and leads to absurd results. According to their theory, a party could scour the country in search of the cheapest possible premium without regard to the surety's financial soundness. If the surety were subsequently declared insolvent, the party could walk away with impunity, leaving the secured party with no recourse against the bond. Here, at the time the settlement agreement was signed, the parties surely did not intend that it be construed in such a one-sided, unfair manner.

Even if the parties' conflicting interpretations were equally plausible, we would still construe the security provision in respondents' favor because it was for their benefit: "[W]hen different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made." (Code Civ. Proc., § 1864.)

*Waiver*

Appellants also contend that respondents "expressly acknowledged the satisfaction of [a]ppellants' obligation" to provide security for the quarterly payments. In support of this contention, appellants cite the letter of October 5, 2000, from Goleta Valley Land Trust. The letter, however, does not support the contention. The letter merely "acknowledges receipt" of the bond issued by Amwest pursuant to the settlement agreement.

■ Appellants allege that they "provided [r]espondents a copy of the bond in advance for their approval." Appellants did fax a copy of the bond to respondents' counsel before they purchased it. In the fax cover sheet, appellants asked counsel to "review" it. They did not suggest that respondents had the right to disapprove their selection of Amwest as the surety. No evidence was presented that respondents approved Amwest or otherwise

waived their contractual right to a continuing guaranty. Waiver "is an intentional relinquishment or abandonment of a known right . . . ." (*Johnson v. Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].) Acknowledging receipt of and reviewing a copy of the bond cannot be deemed an intentional relinquishment of the right to a continuing guaranty.

## Conclusion

The trial court correctly construed the settlement agreement as requiring appellants to maintain the bond guaranty or provide a letter of credit securing their obligation to make the remaining quarterly payments. Respondents did not waive this requirement.

## Disposition

The judgment is affirmed. Respondents shall recover their costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.