Filed 3/19/13  Davidson v. Tucker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CURT DAVIDSON, | D057672 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2007-00083689-CU-BC-CTL) |
| KEVIN TUCKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jay M. Bloom, Judge.  Affirmed.

In this dispute over a conditional settlement agreement between defendant and appellant Kevin Tucker and plaintiff and respondent Curt Davidson, Tucker appeals a superior court judgment that implements rulings vacating that agreement, as found in a November 20, 2009 statement of decision issued by a mediator/arbitrator, who was acting by stipulation of the parties in the capacity of a statutory referee.  (Code Civ. Proc., § 638

et seq.)[1]  In this statement of decision, this mediator/arbitrator/referee (retired Justice Howard B. Wiener; designated here the Referee, as to the Davidson/Tucker dispute) effectively set aside a handwritten settlement agreement previously achieved in another stage of that mediation (on Nov. 5, 2008), in which Tucker had participated as a prospective third party purchaser in the disputed restaurant business deal that gave rise to his appeal within Davidson's breach of contract lawsuit.

Critically, this breach of contract lawsuit was filed not against Tucker, but against certain named defendants, the "Basmar defendants," who were debtors of Davidson under a 2006 promissory note, and who subjected themselves to an arbitration clause in the same November 5, 2008 handwritten settlement agreement (the original "Basmar defendants"; they are not involved in these appellate proceedings).[2]

---

[1]  All further statutory references are to the Code of Civil Procedure unless noted. Under section 638, "A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties:  [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision.  [¶] (b) To ascertain a fact necessary to enable the court to determine an action or proceeding."

[2]  The Basmar defendants (Basmar, LLC, Basil Hernandez and Margaret Hernandez), were originally sued by Davidson in 2007 as his debtors under a promissory note.  With regard to the Davidson/Basmar defendants portion of the overall dispute, we will designate the Referee as the Arbitrator-Referee, since those proceedings were confined to arbitration, not a reference.  However, it should be noted that for purposes of this opinion, the Basmar defendants do not include Margaret Hernandez, who did not actively participate in any of the mediation, arbitration, trial court or appellate proceedings because the parties "settled around" her; no issues about her individual liability are now before us.

2

In appealing this superior court judgment, Tucker calls himself a "third party to the action" and a party to the judgment, and he objects to its underlying findings in the Referee's November 20, 2009 statement of decision, which was issued after further arbitration/mediation was held in September 2009, in the nature of a reference by stipulation. This November 20, 2009 statement of decision, changing a tentative decision that was sent out September 29, 2009, determined that there was no binding settlement between Davidson and Tucker, in Tucker's capacity as an interested third party to the underlying Davidson/Basmar defendants' business deal that was sued upon. The Referee vacated the settlement and stated the matter must be returned to state court for further proceedings, and the superior court adopted the decision as its judgment.[3]

On appeal, Tucker continues to defend the previous version of the Referee's decision, claiming it was the operative one. We first address preliminary appealability issues concerning his third party status in the Davidson/Basmar action, at the trial level and in this court, and on which we requested supplemental briefing (pt. III, *post*). Section 902 allows "any party aggrieved" to appeal an appealable judgment or order. After reviewing the intertwined procedural principles at work here, such as intervention, collateral motion proceedings, and the appropriate limitations upon reference stipulations, we conclude that whether Tucker is viewed as a party to the settlement agreement that is

---

[3]   Section 644, subdivision (a), provides that after a consensual general reference is completed pursuant to section 638, "the decision of the referee or commissioner upon the whole issue must stand as the decision of the court, and upon filing of the statement of decision with the clerk of the court, judgment may be entered thereon in the same manner as if the action had been tried by the court." Section 645 provides for appellate review of such a judgment.

3

collateral to the main dispute, or as an interested third party movant within the lawsuit, or as a permitted intervenor pursuant to section 387,[4] his claims are properly cognizable on appeal. We reach the merits of his appellate contentions in part IV, *post*. They are unsuccessful and the judgment will be affirmed.

I

*STANDARDS FOR REVIEW AND SUBSTANTIVE ISSUES PRESENTED*

The trial court's prejudgment minute order states in pertinent part that the November 20, 2009 statement of decision was consistent with the Davidson-Tucker arbitration agreement and their stipulation that the Referee would determine "all factual and legal issues arising out of" the settlement agreement and whether Tucker or the Basmar defendants had breached it. Subject to our appealability concerns, the main issue presented on the merits is whether the trial court's reading of the scope of the reference stipulation and the entry of its confirming order were correct. In appellate review, the terms of a settlement agreement, including its arbitration clause, are independently construed, in the absence of conflicting extrinsic evidence about the intentions of the parties in reaching that agreement (no such issues about intent raised here). (*Citizens For*

---

4       In relevant part, section 387, subdivision (a) provides "any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding," provided a timely application is made. "An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served . . . ." (*Ibid*.)

*Goleta Valley v. HT Santa Barbara* (2004) 117 Cal.App.4th 1073, 1076 (*Citizens For Goleta Valley*).)

Tucker further contends the trial court should have determined the Referee erred or abused his discretion when he (a) issued a tentative decision (the Sept. 29, 2009 decision), (b) allowed supplemental briefing that arguably expanded the issues presented, and (c) issued the superseding November 20, 2009 statement of decision. (Pt. IV, *post*.) These standards apply for evaluating this procedure: "A general reference occurs where the court, with the consent of the parties, directs a referee to try any or all of the issues in the action. [Citations.] The court appoints the referee, although the person chosen may be the result of the parties' agreement. [Citation.] *The hearing before a referee is conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings*." (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 (*Sy First Family Ltd. Partnership*); italics added; Evid. Code, § 300 [hearing before referee utilizes Evidence Code].) Upon stipulation, the trial courts are authorized to delegate the making of factual findings and legal conclusions to a referee, who utilizes quasi-judicial discretion for controlling the manner of presentation of the evidence, argument and the order of trial. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 907; §§ 128, subd. (a); 607; 631.7; Cal. Rules of Court, rule 3.900 et seq.; all rule references are to the Cal. Rules of Court unless otherwise noted.)

Finally, accepting for the moment Tucker's assumption that the tentative statement of decision dated September 29, 2009 should have been deemed the effective one, we will evaluate his request that as a matter of law, he should have been declared the

5

prevailing party who was entitled to an award of costs and attorney fees. (§ 1032, subd. (b); pt. IV.C, *post*.) "Generally, a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is reviewed for abuse of discretion." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)[5]

Our analysis of each of Tucker's substantive arguments attacking the judgment and underlying statement of decision leads us to conclude that they lack any support in the record. Neither the superior court, nor before it the Referee, committed any reversible legal error, nor did they abuse the applicable degree of discretion, in making the legal determinations underlying the statement of decision and the judgment. We uphold the judgment and its determinations that (a) no binding Davidson/Tucker settlement had been reached that would have terminated the underlying action, (b) further appropriate proceedings must be allowed between the original parties, Davidson and the Basmar defendants, and (c) there is no currently prevailing party, and even on appeal, the parties must continue to bear their own fees and costs.

II

*PHASES OF DISPUTE RESOLUTION*

To resolve both the appealability and substantive issues presented, we summarize at some length the relevant procedural developments in the mediation, arbitration,

---

5    Unless otherwise provided by statute, a "prevailing party" is entitled to recover costs in any action or proceeding "as a matter of right." (§§ 1032, subd. (b); 1033.5, subd. (a)(10)(A)-(C) [allowable costs under § 1032 include attorney fees authorized by contract, statute, or law]; *Goodman v. Lozano, supra*, 47 Cal.4th 1327, 1333.) The abuse of discretion standard applies, except when the sole issue involves the interpretation of a statute and questions of law that are reviewed de novo. (*Id.* at p. 1332.)

reference and court hearings. The appellate arguments require us to focus upon (1) the appropriate scope of the stipulated reference, which was conducted as an ancillary or collateral matter to Davidson's original complaint against the Basmar defendants; (2) the factual and legal evolution of the dispute during the reference and court proceedings, and (3) the contractual aspects of the November 5, 2008 Davidson-Tucker settlement agreement (the Nov. 5, 2008 agreement).

A. Nature of Disputes; Davidson's Action Filed in December 2007

We take some of this factual background directly from the Referee/Arbitrator's statement of decision. Briefly the facts are as follows: "In September 2006, Basmar signed a $425,000 promissory note in favor of Davidson. [The Basmar defendants] guaranteed payment of the note. To secure payment, Basmar provided collateral consisting of the assets of two restaurants, Miami Grille, in Poway and in UTC. The collateral included all Basmar's goodwill, equipment, property and fixtures. On November 8, 2007, Davidson filed a UCC-1 Financing Statement regarding the collateral.

"[The Basmar defendants] defaulted on the note resulting in Davidson filing a complaint in San Diego Superior Court in December, 2007 seeking $425,000 damages plus interest, attorney fees and costs against [the Basmar defendants].

"Before the action was filed and for a period of time thereafter, Davidson negotiated with the [Basmar defendants] to purchase the restaurants. Davidson's efforts in this regard include his October 10, 2007 non-binding letter of intent on behalf of [his company] Miami Grille, Inc. setting forth general terms of a proposed sale of the restaurants from Basmar to Miami Grille, Inc. These negotiations terminated on

7

January 9, 2008 when Joel Bryant, counsel for Davidson, e-mailed Basmar's [former] attorney . . . that [Davidson] 'is no longer interested in purchasing from Basmar the Miami Grille assets.' "

In May 2008, the Basmar defendants brought a cross-complaint against Davidson and others on various tort and contract theories.

In late 2008, Davidson learned that "Tucker, the principal of Epicurean, Inc. had taken over the operation of the restaurants. The source of this information included an article in a local Poway newspaper stating that 'in the fall of 2008, a new owner invested in the future of Miami Grille. Kevin Tucker, a Poway resident, is one of the first patrons to recognize the possibilities with unique and delicious food served in an equally exceptional atmosphere . . . . [Tucker's] newly formed corporation, Epicurean Inc. officially took over the day to day operations just before the holidays.' "

### B. Initial Mediation and the November 5, 2008 Agreement

On November 5, 2008, Davidson and the Basmar defendants appeared for an agreed-upon mediation session before the Referee (Referee-Arbitrator), joined by Tucker as an interested third party. Davidson was represented by attorneys Joel Bryant and Bryan Sampson. Both the Basmar defendants and Tucker (as a prospective purchaser) were represented by the same attorney, Thomas Nelson. "As a result of their collective efforts, a settlement was reached, the terms of which are set forth in a three page handwritten document entitled SETTLEMENT TERMS." This November 5, 2008 agreement contains an arbitration clause that the Referee/Arbitrator "shall serve as a binding arbitrator to decide any issue arising out of this settlement."

8

This November 5, 2008 agreement contemplated that Tucker, identified as "a nonparty to this litigation, or his designee" would pay Davidson $100,000 and would then acquire the Miami Grille in UTC, free and clear of any liens or claims from Davidson, who still had a UCC-1 lien against its assets. On the other hand, Davidson would acquire the restaurant in Poway and take steps to pursue his rights under his secured note, and would ultimately purchase the collateral in an execution sale. The Basmar defendants, who were liable on the note and who guaranteed it, would be liable for no more than $50,000. This would eliminate claims of Basmar's creditors and remove encumbrances and/or liens against the property, allowing Davidson to own the Poway restaurant free and clear.

Also, Davidson would seek an assignment of the existing lease (with nonparty Kimco) or a new lease. Mutual releases would follow and all litigation would be dismissed with prejudice. Each party would bear its own attorney fees. Further settlement documents were anticipated, but the November 5, 2008 agreement was said to be understood as an enforceable settlement agreement. Davidson notified the superior court that was hearing this action against the Basmar defendants (Judge Bloom) about this settlement, and the court set a tentative dismissal date in December 2008, later continued to June 2009. In the meantime, a receiver was appointed to value and to preserve the restaurant assets.

C. Sequence of Enforcement Efforts of November 5, 2008 Agreement

Ultimately insurmountable difficulties ensued in carrying out this proposed settlement. During the next few months, Davidson's attorney prepared settlement

9

documents, including a formal written version of the settlement agreement, and delivered them to Attorney Nelson, who was jointly representing Tucker and the Basmar defendants (regarding the $50,000 judgment against Basmar subject to a covenant not to execute upon it). No further settlement documents were ever signed, each party blaming the other. There was much uncertainty about how Davidson could obtain a liquor license in a timely manner (before the end of Jan. 2009), without first obtaining a lease or assignment of the lease of the Poway restaurant, so he could post the appropriate application notices. The lease was lost, the Poway restaurant closed, and the Basmar defendants left the equipment but took the supplies and employees with them to another location.

In February 2009, the parties participated in another mediation hearing before the referee/arbitrator, but no progress was made. Davidson began to claim the settlement agreement was breached and he was owed damages. In April 2009, Davidson filed a motion with the Referee/Arbitrator to enforce the settlement agreement, tentatively set for hearing in May 2009. (§ 664.6 [motion procedure for enforcement of the Nov. 5, 2008 agreement].) Davidson was claiming damages from all defendants and from Tucker, jointly and severally, of over $886,000 from the breach of settlement agreement. Tucker was still not a party nor otherwise charged in a pleading with breach of contract (not in Davidson's original or amended complaint, nor in the Basmar defendant's cross-complaint).

D.  Tucker Files Separate Action in July 2009; Tucker and Davidson
Stipulate in September 2009 for Trial by Reference; Limited Court Appearances Follow

In July 2009, Tucker filed a separate action naming Davidson as the sole defendant, requesting declaratory and injunctive relief to enforce the November 5, 2008 agreement.  (*Tucker v. Davidson* (Super. Ct. San Diego County, 2009, No. 37-2009-00095231-CU-MC-CTL); "Tucker's complaint").)[6]  At an August 2009 hearing in that separate action, Tucker sought a stay of the pending settlement proceedings in this case, so that he could litigate the matter through his own complaint, but the trial judge (Judge Prager) denied the request.

Consequently, Davidson and Tucker agreed to go back to the Referee to resolve their disputes over the November 5, 2008 agreement, pursuant to its arbitration clause. On September 3, 2009, at the outset of that hearing, they reached a written stipulation that Davidson's case against Tucker would be tried as a California statutory reference with or without an order, and they would later seek court confirmation from Judge Bloom of the statutory reference in this action, pursuant to section 638.

This record is sparse about the court hearings in September 2009, and how the Referee appointment procedure was conducted, and when the superior court judge approved the stipulation for reference that had been reached September 3, 2009.  The record is clear that after the November 5, 2008 agreement was reached, the parties

---

6      In connection with our request for supplemental letter briefs on the appealability issues, Tucker requested augmentation of the record concerning the separate declaratory relief complaint he filed, as well as its voluntary dismissal without prejudice.  (Rule 8.155.)  We granted that request.  No response was received from Davidson.

11

proceeded first under its arbitration clause (in the Feb. 2009 hearing). In their stipulation on September 3, 2009, they agreed to conduct a reference on the issue of enforcement of the settlement agreement. According to Tucker's attorney's declaration, the parties attended an unreported status conference in the superior court on September 4, 2009 and notified Judge Bloom about this agreement for a reference (no minute order in record). An ex parte hearing was planned for September 9, 2009, for the stipulation to be approved by the court. At that unreported ex parte hearing (no minute order in record), Judge Bloom discussed with the parties whether a provision should be added to specify the court would conduct independent review of the Referee's decision, before entering judgment on it.[7] Tucker's attorney obtained signatures on a revised stipulation from Davidson's counsel and the parties, but not from the Basmar defendants.[8] Thus, during the first day of the trial by reference, the Referee stated Tucker and Davidson were

---

[7] This matter started out as a mediation. Rule 3.900 specifies that the reference procedure under section 638 must not be used to appoint a mediator. As the matter progressed, the parties and the referee came to an apparent agreement that a general, not a special, reference of settlement agreement issues was being held. (§§ 638, 644, 645 [appealable judgment entered after general reference]; see pt. III, *post*, regarding appealability.) By contrast, in a "special" reference under section 639, "The findings of the referee are advisory only, and do not become binding unless adopted by the court; the court must independently consider the referee's findings before acting." (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522 (*Jovine*).)

[8] The stipulation for reference was again revised after the December 11, 2009 superior court hearing on the motion by Tucker to appoint a referee and enter judgment on the decision, and as will be discussed concerning appealability, the stipulation was not approved by order until after the next hearing on March 12, 2010, and formalized April 20, 2010. (Pt. III, *post*.)

12

subject to the reference, but the matter would be conducted as an arbitration against the Basmar defendants.

Accordingly, in the words of the Referee/Arbitrator, Davidson's claims for damages proceeded to hearing on a dual procedural track in September 2009. As to both the Basmar defendants and Tucker, the Referee/Arbitrator heard the evidence and arguments. Counsel for the Basmar defendants (Thomas Nelson) was present, but Basmar did not participate to any great extent, as the dispute was now mainly between Davidson and Tucker on money and UCC-1 lien issues, not about who should take over the (closed) Poway restaurant. In any event, Davidson's claim against the Basmar defendants was presented as an arbitration, based on the arbitration clause in the November 5, 2008 agreement.

Davidson was represented by the same attorneys as before (Bryant and Sampson), but now Tucker had his own counsel (Michael Vivoli). At the three-day hearing, both Davidson and Tucker testified, along with other witnesses. The Referee/Arbitrator took proposals for a statement of decision, first providing the parties with an initial draft that referred to a possible requirement for Davidson to make an election of remedies (i.e., pursuing either the Basmar defendants under the promissory note and lien, or the $100,000 from Tucker as promised in the settlement).

After the parties signed the September 2009 stipulation and the hearing with the Referee/Arbitrator was concluded on the settlement agreement disputes, Tucker voluntarily dismissed his declaratory relief complaint on September 29, 2009, without prejudice.

13

E.  Referee/Arbitrator's Tentative Decision in September 2009;
Supplemental Briefing Allowed and Motion Filed in Court

On September 29, 2009, the Referee/Arbitrator issued a tentative decision that identified Tucker as the prevailing party on Davidson's breach of settlement agreement claims, apparently on the basis that Davidson had failed to make sufficient efforts to obtain an assignment of the lease or a new lease for the restaurant premises, leading to "commercial impossibility" to carry out the settlement.  The Referee/Arbitrator ordered the parties to bear their own costs and attorney fees for this proceeding, and specified that counsel for the prevailing party, at that point Tucker, should prepare documents to obtain an order of reference.  Tucker's attorney was also required to prepare an arbitration award (regarding the Basmar defendants) and a statement of decision and proposed judgment.

After the Referee/Arbitrator issued the decision, he received several letter briefs questioning the reasoning and the result.  The parties requested clarification on whether Davidson must release his UCC-1 lien whether or not Tucker completed his $100,000 payment, under the settlement terms, or if the original remedies sought in the complaint would be adequate (foreclosing on the lien and pursuing the Basmar defendants).  Emails were sent out from the Referee's office to allow supplemental briefing by both sides, which was submitted.

In Davidson's response to the Referee, he stated that he agreed with the "commercial impossibility" finding that the November 5, 2008 agreement could not be enforced, due to failure of conditions.  On September 30, 2009, Davidson notified Tucker and the Referee he would be waiving and dismissing his contract theories against Tucker,

14

and would go back to court to pursue the Basmar defendants under their promissory note. The parties continued to argue about whether Davidson could now make such an election of remedies (between the Nov. 5, 2008 agreement terms or the complaint theories).

In reply to the Referee, Tucker contended he had wholly prevailed in the decision, because of the Referee's tentative finding Davidson did not timely perform his obligations under the November 5, 2008 settlement agreement. Tucker argued Davidson should not be allowed to withdraw his contract claims for damages, since Tucker had now prevailed upon them (no breach by Tucker found). Tucker argued that because of Davidson's breach of the November 5, 2008 agreement, the UCC-1 lien should be released, and Tucker did not owe the $100,000 in exchange for it, and he could deduct his "prevailing party" attorney fees and costs incurred in the proceeding from that amount.

Also based on that tentative decision dated September 29, 2009, Tucker filed a motion in superior court on November 12, 2009, seeking orders from Judge Bloom to appoint the Referee (retroactively), and to enter judgment on that decision. A hearing date was set for December 4, 2009 (later continued to Dec. 11, 2009).

F. Statement of Decision is Finalized

While Tucker's court-filed motion to enter judgment was still pending, the Referee/Arbitrator revised his findings and on November 20, 2009, issued a final document entitled Statement of Decision. It contained many of the same facts and conclusions, but significantly changed the result, *to decide the conditions for the settlement were not satisfied, although neither party was in breach of it*, and it was vacated. Specifically, the Referee/Arbitrator acknowledged there had been many

15

uncertainties in how to carry out the November 5, 2008 agreement: "Thus, although in one sense the mediation was successful resulting in the signing of Exhibit 1 [the Nov. 5, 2008 agreement], consummation of the settlement was conditioned on (1) Tucker successfully negotiating with Basmar to agree on the terms on which he would acquire the UTC restaurant and (2) Davidson acquiring the restaurant at his foreclosure sale and entering into a satisfactory lease with the lessor of the restaurant premises. Consequently, from the perspective of both parties, there would be a period of time before the transaction could be completed. Clearly, there were risks that the conditions precedent to their deal would not be satisfied." Extensive factual analysis followed, about Davidson's problems in obtaining the restaurant lease or liquor license.

The Referee/Arbitrator then ruled that in light of the known risks that the conditions precedent to the deal would not be satisfied, "Neither party breached the settlement agreement." The Referee/Arbitrator further explained: "*The conditions for the settlement were simply not satisfied.*" (Italics added.) Through no fault of Davidson's, "he was unable to acquire the lease for the restaurant property on satisfactory terms."

The Referee then explained the problems addressed in the supplemental briefing, and added this language to the statement of decision: "Following the arbitration hearing and my tentative decision, Tucker made clear that he now wants the benefit of the settlement requiring Davidson release the UCC lien in consideration of his paying $100,000 reduced by his attorney fees and costs. In order to resolve these issues through this arbitration proceeding, counsel submitted written briefs. After consideration of their respective arguments, I reject Tucker's arguments. Davidson is not obligated to release

16

the UCC lien. Tucker is not entitled to attorney fees and costs." Specifically, there was no prevailing party, because:

> "Davidson's counsel correctly states the occurrence of a condition precedent is essential before contractual rights accrue. When an essential condition is not satisfied, the contract is terminated. The parties are returned to the status quo ante. And restoration of the status quo ante certainly occurs when the terms of a contract cannot be performed by commercial impossibility, which occurred here because of Davidson' inability to lease the Poway restaurant premises in a timely manner. [¶] It is also clear the terms of settlement in this matter are not severable. The settlement terms were interdependent -- Davidson was to acquire the Poway restaurant and receive $100,000 in exchange for his releasing his UCC lien; Tucker the UTC restaurant free of the UCC lien. Unfortunately, for a variety of reasons, discussed at great length during the arbitration, Davidson did not acquire the Poway restaurant, the benefit of his bargain resulting in the contract being terminated."

The statement of decision next determines, "In light of the foregoing ruling and the restoration of the parties to the status quo ante, the issue of whether Davidson made a binding election of remedies by proceeding with the arbitration/reference is now moot." The Referee therefore required that the matter be returned to state court for further proceedings. Since there was no prevailing party in the reference, and the November 5, 2008 agreement required each party to bear its own attorney fees and costs, each party was specifically required to bear its respective costs.

Although the Referee took further objections, he did not make further changes. Also on November 20, 2009, the Referee/Arbitrator issued a document entitled "Arbitration Award" as to Davidson and the Basmar defendants, based on the same reasoning and determining there had been no breach of the settlement agreement, the

17

parties were returned to the status quo ante, the UCC lien need not be released, and the matters were returned to state court for further proceedings.

## G. Motions and Court Proceedings in December 2009

Tucker's still-pending motion to appoint the referee (retroactively) and to enter judgment on the September 29, 2009 Referee's decision was set for hearing on December 11, 2009. Tucker argued that this original decision was correct and Davidson should not now be allowed to dismiss his breach of contract claim, as against Tucker who had prevailed.

Davidson opposed the motion, including a copy of the finalized November 2009 statement of decision. Neither party was relying on section 664.6 to enforce the settlement, and instead were proceeding under section 638.

On December 11, 2009, the trial court (Judge Bloom) heard argument and issued its minute order, granting Tucker's request in part to appoint the Referee pursuant to stipulation, only as to Tucker and Davidson. It ruled that the stipulation had been ineffective as to the Basmar defendants to create a reference, because they did not sign it, and only an arbitration was authorized for them. Tucker's request to enter judgment on either of the Referee's decisions was denied without prejudice, because the Referee was still hearing objections on the matter.

## H. Further Court Proceedings in March 2010; April 2010 Formal Orders; Appeal

Tucker renewed his motion to enter judgment on the Referee's decision, and obtained a hearing date of March 12, 2010. Tucker took the position that Davidson should not be allowed to "dismiss" his claims after losing on them at the reference (i.e.,

18

not recovering the $886,000-some damages he sought), so that the "revised" statement of decision was incorrect. In any case, Tucker contended that the Referee had found that neither Tucker nor the Basmar defendants had breached the settlement agreement, so Davidson was not the prevailing party.

Davidson filed an alternative motion to enter judgment upon the November 20, 2009 Referee's statement of decision, for the same hearing date. He contended that statement of decision was the final one and properly disposed of all the settlement issues, therefore justifying entry of judgment under section 644, subdivision (a). Each party filed opposition and reply to the other's motion, and each contended their proposed judgment (based on different statements of decision) was the only one consistent with the parties' stipulation to resolve the settlement issues (breach of contract) by reference.

After hearing argument, the trial court issued a minute order dated March 12, 2010 (1) granting Davidson's motion and (2) denying Tucker's motion. The court selected the statement of decision dated November 20, 2009 on which to enter judgment, stating that it had been issued after the Referee heard all the evidence and arguments of counsel. This final statement of decision was consistent with the Davidson-Tucker agreement that the Referee would determine all the factual and legal issues arising out of the settlement agreement and whether Tucker or the Basmar defendants had breached it. The court agreed with the conclusions of the statement of decision that there was no prevailing party to a settlement which cannot be enforced, and that each side should bear their own costs and fees, according to the stipulation. The court rejected a request that the proposed order should include language providing that the superior court would conduct an

19

independent review of the referee's decision, because section 644, subdivision (a) did not require such independent review.  (See fns. 3, 7, *ante*, regarding type of review.)

On April 20, 2010, the formal order appointing the Referee and the judgment were filed.  In the judgment, the court recited the findings of the Referee/Arbitrator that "neither party breached the settlement agreement.  The conditions for the settlement simply were not satisfied.  Thus, the parties are returned to the status quo ante and the settlement is vacated.  Plaintiff Davidson is not obligated to release his UCC lien and the matter is returned to the State Court for further proceedings."  Each party was to bear its own costs and fees, and Tucker was not designated a prevailing party.  The court ordered that the decision of the Referee would stand as a decision of the court, pursuant to section 638 et seq.

On June 25, 2010, Tucker appealed the judgment, identifying himself as a "third party to the action," but a party to the judgment.  (§ 645; see fn. 6, regarding supplemental briefing.)

III

*APPEALABILITY ISSUES*

On appellate review, we must assure ourselves that the trial court had subject matter jurisdiction to render the challenged orders, and we recognize that such jurisdiction cannot be conferred by consent, waiver or estoppel.  (*Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1113 (*Housing Group*); 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 13, p. 585.)  We sought supplemental briefing on Tucker's status as an appellant, and received Tucker's response, arguing he is sufficiently

20

"aggrieved" by the judgment to appeal it, and the reference order was effective, nunc pro tunc. (§ 902 ["any party aggrieved" may appeal an appealable judgment or order]; see 9 Witkin, Cal. Procedure, *supra*, Appeal, § 24, p. 87 ["Ordinarily, the appellant is a party to the action below, who may be named in the original pleadings or brought into an existing action or proceeding by an order to show cause."].) Tucker also referred to the declaratory relief complaint seeking to enforce the settlement agreement that he filed, but dismissed without prejudice. (Rule 8.155.) Davidson did not respond to our request.

Section 638 normally requires a written agreement to a general reference, or an agreement in open court which is entered in the minutes or docket of the court. (See *Jovine*, *supra*, 64 Cal.App.4th 1506, 1527 [questioning if an agreement for a reference may be "implied," or accomplished "de facto."].) "The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it. In contrast, a court acts in excess of jurisdiction where, even though it has subject matter jurisdiction, it has no jurisdiction or power to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. [Citation.] . . . Assigning a matter to a referee without first obtaining the statutorily required written consent filed with the clerk or entered in the minutes or docket is such an act; it is beyond the power of the court, but is not in excess of its subject matter jurisdiction and therefore is merely voidable." (*Ibid*., italics omitted.)[9]

---

[9]    In *Jovine, supra,* 64 Cal.App.4th 1506, 1526-1527, footnote 26, the court distinguished between acts by a court in excess of subject matter jurisdiction (they are void); but acts in excess of other kinds of jurisdiction are merely voidable.

21

When the trial court expressly authorized this stipulation for reference (in Dec. 2009), it was already retroactive in nature, since the trial by reference had taken place (in Sept. 2009, although the statement of decision was not finalized until Nov. 2009). We examine the Referee's scope of authority under the stipulation, and the procedures used for court confirmation of the stipulation, according to statutory and case law guidelines on the issues properly subject to a voluntary reference. It is usually required that parties who participate in a stipulation for an order or judgment must be parties in pending litigation. (See 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 315, p. 927 ["judgment in favor of a person who is not a party to the action is obviously beyond the authority of the court"].)

For example, in *Housing Group, supra*, 90 Cal.App.4th 1106, 1107-1108, the appellate court ruled that parties who had engaged in private dispute resolution (without filing a lawsuit) could not effectively stipulate to the appointment of a judicial referee/judge pro tempore, to create a jurisdictional basis for enforcement of a settlement in a motion proceeding under section 664.6. The appellate court decided that a general reference for settlement must be sought in pending litigation, to empower the court to render such an order under section 638, and that the stipulated petition for the appointment of a "judge pro tempore" to enter a settlement had not presented the superior court with a justiciable controversy. (*Housing Group, supra,* at p. 1113.)

---

(*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088.) There is no contention here that the judgment was void or voidable, merely that it is arguably erroneous, and our supplemental briefing request addressed a related appealability issue.

22

In our case, two actions were pending in early September 2009, and in the Davidson one, the trial court heard a few ex parte matters at the outset of the reference, to address its validity. Later, both parties brought noticed motions to approve the reference stipulation (retroactively) and to enter judgment. This procedure somewhat explains the delay in formalizing the order, and even if the December 2009 court authorization of the stipulation for reference was untimely, it was not procedurally defective in any jurisdictional sense. These parties had fully disclosed to the trial court the substance of their current disputes, and the court worked with them in the process of reaching an enforceable stipulation, in this ancillary or collateral matter about the enforceability of the November 5, 2008 agreement, which was related to the underlying action. (Cf. *Housing Group, supra*, 90 Cal.App.4th 1106, 1113-1114.) Thus, the superior court had an adequate basis in the record of this action to treat Tucker as a participant in the collateral settlement proceedings in the Basmar defendants' litigation, out of which they grew.

We are satisfied that Tucker, although a third party in the action, has standing to appeal as an aggrieved party. He was essentially acting as an intervenor in this action, or as a third party participant in the collateral settlement agreement litigation. The courts will allow appeals to be taken from such rulings, by aggrieved parties, such as where a statute expressly authorizes a motion or collateral proceeding, and the order finally disposes of the rights of the party. (*McClearen v. Superior Court of Tulare County* (1955) 45 Cal.2d 852, 856 (*McClearen*), see 9 Witkin, Cal. Procedure, *supra,* Appeal, § 143, pp. 216-218.) Such a movant need not seek by intervention to become a party to

23

the main action, to be considered to be a party to the main proceeding with respect to the motion (there, for lien rights). "[H]is failure to pursue the optional remedy of intervention cannot be considered as having any adverse effect upon his right to appeal from a denial of his motion." (*McClearen, supra*, at p. 856.) "It is clear that the denial of the motion amounted to a final determination of the [movant's] right to a lien, and it is the general rule that a final determination of litigation as to a party constitutes an appealable order or judgment." (*Ibid.;* 4 Witkin, Cal. Procedure, *supra,* Pleading, § 220, p. 295 ["application" to intervene may be done informally or in chambers, and the court may grant leave by an ex parte order, where subject of proposed intervention disclosed].)[10]

For all of these reasons, we conclude Tucker's stipulation with Davidson for reference, with regard to the disputes arising from the November 5, 2008 agreement, was reached under court supervision, and was tantamount to a court-approved general reference for resolution of a specific issue in this case, i.e., whether a binding third party settlement had been reached that would obviate the need for further litigation between the original plaintiff and named defendants (Davidson and the Basmar defendants). (§ 638.) The superior court's judgment that adopted the Referee's November 20, 2009 statement of decision effectively terminated the involvement of Tucker in the current action against others (which involvement was based solely upon the November 5, 2008 agreement), and it is a final judgment appealable by Tucker. (§§ 904.1, subd. (a)(1); 644, subd. (a); 645.)

---

10    Rule 3.932(b) allows a motion for leave to intervene to be made before a referee, but no such procedure was used here, nor was any such formal application made in the trial court under section 387.

24

IV

*MERITS OF APPELLATE ARGUMENTS*

We next consider whether the judgment is well supported and substantively correct on this record, and whether the trial court erred in maintaining the action in the superior court forum for any future adjudication. Tucker specifically contends: (a) the Referee's decision went beyond the permissible scope of the reference stipulation and later confirming orders; (b) when the Referee issued the September 29, 2009 decision, but then allowed supplemental briefing, he erred or abused his discretion by expanding the issues presented, and the trial court should not have approved the superseding November 20, 2009 statement of decision. Finally, if we accept Tucker's argument that the September 29, 2009 decision should have been deemed the effective one, he requests a declaration he is the prevailing party and is entitled to a statutory award of costs and attorney fees. (§ 1032, subd. (b); the Nov. 5, 2008 settlement agreement required each party to bear its own fees and costs.)

A. Issues Presented to the Referee; Role of Referee

After the tentative statement of decision was issued September 29, 2009, both parties sent letters inquiring about the substance of it, and the Referee requested and received supplemental briefing about how to reconcile their differing positions. It is apparent that the parties' legal theories for their respective proposed recoveries were still evolving. The November 5, 2008 agreement contained an arbitration clause providing that the Referee would be available to resolve any disputes arising out of the agreement. The form of the stipulation for reference was also evolving, in response to concerns

25

expressed by the superior court judge at the unreported September ex parte hearing and status conference, as well as at the December 11, 2009 and March 12, 2010 hearings, about his proper role in reviewing the decision. (§§ 638, 639; see fns. 3, 7, *ante*.)

Under several alternative statutory schemes, trial courts are authorized to appoint subordinate court officers, pursuant to stipulation of the parties, to delegate "the authority to render binding factual findings or judicial determinations." (*In re Marriage of Assemi, supra*, 7 Cal.4th 896, 907 [enumerating methods, e.g., temporary judge appointment pursuant to article VI, section 21, of the Cal. Constitution; arbitrator appointment under private contractual arbitration provisions of §§ 1280-1288.8; or referee pursuant to § 638].) An agreement of the parties about the issues to be referred to the referee is required "in order to comport with the constitutional prohibition against delegation of judicial power." (*Jovine, supra*, 64 Cal.App.4th 1506, 1522.) "The rules of evidence apply in a referee's hearing [Evid. Code, § 300], and it has been held that the proceeding is quasi-judicial and must be conducted generally in the same manner as if it were before a court." (6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 73, p. 500; *Sy First Family Ltd. Partnership, supra*, 70 Cal.App.4th 1334, 1341.)[11]

An alternative means of enforcement of settlement agreements is the filing of a separate equity action, such as Tucker's complaint in that style, but he dismissed it while the reference order proceedings were still pending, evidently in reliance on them. (See

---

[11] Rule 3.931(a), added in 2009, provides that all proceedings before a referee that would be open to the public if held before a judge must be open to the public, regardless of where they are conducted. (6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial (2012 supp.) § 73, p. 62.)

26

6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 126, pp. 562-563.) The procedure that was followed in this Davidson/Basmar defendants action, with Tucker acting as a third party, was unusual, but several things are clear: The settlement agreement disputes raised contract issues, and the trial court accepted the arrangement that the Referee (a retired Justice) would have quasi-judicial powers to rule upon them, anticipating that standard civil procedure would be used in conducting the proceedings.

We have discussed above the problems about the lack of any specific pleading of Davidson's theories against Tucker, regarding alleged breach of the settlement agreement. The record supports treating the settlement agreement litigation as a special proceeding or collateral matter that arose out of the original Davidson lawsuit against the Basmar defendants, and that was generally referred for stipulated resolution in reference proceedings. (*McClearen*, *supra*, 45 Cal.2d 852, 856.) Tucker had proposed to assist in the settlement of the original set of problems, but new problems arose, and we next consider the result, as approved by the superior court judgment.

B. Scope of the Reference Stipulation and Order; Developing Proceedings

Throughout this collateral settlement agreement litigation, the Referee was acting in a quasi-judicial capacity, and he had the ability to interpret the settlement agreement, essentially as a pleading, in an effort to resolve the disputes under it. This presented issues of law about the contractual aspects of the Davidson-Tucker settlement agreement, and the Referee interpreted it according to well-accepted contract principles. "Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event. [Citations.] Thus, a condition precedent

27

is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313 [interpreting arbitration agreement conditions].) "The nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons. But when a party has failed to fulfill a condition that was within its power to perform, it is not an excuse that the party did not thereby intend to surrender any rights under the agreement. [Citation.] A contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement." (*Id.* at pp. 313-314.)[12]

On appellate review, this court independently construes the terms of a settlement agreement, since there is no argument that there was significantly conflicting extrinsic evidence about the intentions of the parties in reaching that agreement. (*Citizens For Goleta Valley*, *supra*, 117 Cal.App.4th 1073, 1076.) This record demonstrates that the Referee was exercising discretion in his quasi-judicial capacity of resolving the settlement issues. As would any trial judge, the Referee responded to the developments that occurred during the presentation of evidence, which apparently included the consideration of amendments to conform to proof. We think the Referee was, in effect,

---

[12] We need not discuss the reasoning of the Referee that "commercial impossibility" justified the finding that the November 5, 2008 agreement could not be enforced, due to failure of conditions. We review the judgment, not the reasoning underlying it. (*D'Amico v. Bd. of Optometry* (1974) 11 Cal.3d 1, 19.)

28

utilizing the doctrine of variance from pleadings. The purpose of that doctrine is described in a treatise:

> "[T]he adverse party is entitled to know in advance, from the pleading, what kind of proof will be offered. Failure of the proof to correspond to the pleading is a variance, and a material variance may be fatal to recovery. In the traditional language, a party must prevail, if at all, on the case (or cause of action) made by his or her pleadings, and not on some other developed by the proofs."
> (5 Witkin, Cal. Procedure, *supra*, Pleadings, § 1209, p. 641.)

Again according to this treatise, modern law on variance follows these rules: "(a) Slight variance may be disregarded as immaterial, and even substantial variance may be disregarded or cured under the doctrine of 'theory on which the case was tried.' [Citation.] [¶] (b) Most kinds of material variance, which would be ground for reversal if uncured, may be corrected by an amendment to conform to proof. [Citation.] [¶] (c) Some departures greater than variance and constituting a complete failure of proof cannot be cured or corrected and call for reversal of the judgment." (5 Witkin, Cal. Procedure, *supra*, Pleadings, § 1209, p. 642.)

Despite the focus in the appellate briefs upon the manner of the Referee's conduct of the proceedings, we are mindful that our review is of the judgment that approved his statement of decision, and it was the trial court's minute order and judgment that determined that the Referee had not exceeded the scope of the reference stipulation and confirming order (i.e., the final statement of decision was consistent with the Davidson-Tucker agreement that the Referee would determine all the factual and legal issues arising out of the settlement agreement and whether Tucker or the Basmar defendants had breached it). (See *Clark v. Rancho Santa Fe Assn.* (1989) 216 Cal.App.3d 606, 626

29

[where it was a referee who tried the issues of fact, the decision whether to grant a new trial should be delegated to same decisionmaker, absent an indication in the reference order of a more temporary appointment; "the decision-maker most familiar with the action should be the one with the duty and responsibility to decide a motion for new trial -- in this case, the referee. The order issued on the motion was within the scope of his discretion to evaluate the grounds for relief [offered] on the merits."].)

In light of the long history of these proceedings, and the familiarity of the Referee with the evolving dispute, we cannot find any abuse of discretion in his allowance of supplemental briefing to address the issues that the parties were continuing to dispute, such as the real world consequences of the decision (release of Davidson's UCC-1 lien, with or without Tucker's $100,000 payment as adjusted for attorney fees incurred). This appears to have been an effort to respond to the concerns and changing theories presented, and the Referee was entitled to seek further briefing and respond to it, according to the evidence presented. This could be viewed as an application of the doctrine of variance, or as an exercise of discretion in controlling the order of trial, and in any case, the parties were given notice and an opportunity to respond. (§ 128, subd. (a)(3) [power of court to provide for the orderly conduct of proceedings before it]; § 187 [judicial officer has all the means necessary to carry his jurisdiction into effect, and to develop "any suitable process or mode of proceeding" that is "most conformable to the spirit of this Code"]; also see 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 73, pp. 500-501.)

We disagree with Tucker's further appellate arguments that the trial court erred as a matter of law in accepting the procedure followed by the Referee and the Referee's interpretation of the evidence, when the court selected the November 20, 2009 statement of decision as controlling (over the tentative one). This procedure was properly ruled to be in conformance with the apparent agreement of the parties to have their disputes heard by reference, to try the settlement enforceability issues and to report a statement of decision. The trial court properly determined that the Referee had appropriately decided the legal issues about the settlement, by finding that it had failed, and that Davidson's action against the Basmar defendants must be returned to state court for any future adjudication.

Although it would have been the better practice for the parties to seek to obtain the stipulated order before carrying through the trial by reference, we cannot fault the trial judge for bearing with the parties in this manner, or for holding them to their apparent agreement. The November 5, 2008 agreement for dispute resolution properly allowed these reference proceedings to be implemented, and the trial court appropriately enforced that agreement's dispute resolution terms, and the result as determined by the voluntarily selected Referee and his contractual analysis.

### C. No Prevailing Party Costs Awardable

The Referee determined that under all the circumstances of the failed November 5, 2008 agreement, it was only fair that each of the parties shall bear his respective costs. The statement of decision clearly rejected any reliance by Tucker on a proposed version of the formal settlement document prepared by Davidson's counsel, which contained an

31

attorney fees clause, since Tucker had refused to sign it.  The Referee was well supported in his finding that there was no applicable written contract providing for a prevailing party award of attorney fees and costs.  Further, Tucker was not entitled, as a matter of law, to receive a statutory award as a "prevailing party," within the meaning of section 1032, subdivision (b).

The trial court had a substantial basis in the record to implement the Referee's costs determination by entering judgment upon the statement of decision, and no reversible error or prejudicial abuse of discretion has been shown.

## DISPOSITION

Affirmed.  Each party shall bear its own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.

McDONALD, J.

32